John **TOMCZYSCYN** and **Josephine Tomczyscyn, Parents and Beneficiaries of Gregory Tomczyscyn, Deceased**

v.

**TEAMSTERS, LOCAL 115 HEALTH AND WELFARE FUND.**

Civ. A. No. 83–4237.

United States District Court, E.D. Pennsylvania.

July 10, 1984.

Paul N. Sandler, Hovsepian & Sandler, P.C., Philadelphia, Pa., for plaintiffs.

Robert C. Cohen, Markowitz & Richman, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, Chief Judge.

In this lawsuit, plaintiffs John and Josephine Tomczyscyn seek to recover a $15,000.00 death benefit allegedly due to them as beneficiaries of their deceased son Gregory Tomczyscyn. Plaintiffs allege that, at the time of his death, Gregory was a member of Teamsters Union Local 115, and that he was entitled to life insurance in the stated amount through a health and welfare plan administered by the union and decedent's employer.[1] Defendant, Teamsters Local 115 Health and Welfare Fund has filed a motion for summary judgment, arguing that plaintiffs have not exhausted their right to appeal within the Fund, and that the trustees' decision denying plaintiffs' claim was reasonable on the merits. Because I conclude that plaintiffs must, in the first instance, address their claims and supporting evidence to the Fund's trustees through the appeal procedure established by the Health and Welfare Plan, I will grant defendant's motion at this time. However, because I also conclude that the defendant Fund breached its obligation to provide plaintiffs notice of their right to appeal within the Fund, the motion will be granted without prejudice to plaintiffs' right to file a second lawsuit if the plaintiffs take such an appeal within sixty (60) days after entry of this Order and if the trustees thereafter deny benefits.

### Background

On July 9, 1981, Gregory Tomczyscyn was hired by Air Master Corporation, an employer signatory to a collective bargaining agreement with Teamsters Union Local 115. Pursuant to the agreement, Air Master Corporation contributed to Local 115's Health and Welfare Fund, and bargaining unit members were entitled to the plan's benefits.[2] Among those benefits was the $15,000.00 death benefit now sought to be enforced by plaintiffs.[3]

Employees covered by the collective agreement became eligible for benefits after sixty days from their date of hire if a participating employer made contributions on behalf of those employees for 45 days during the sixty-day period.[4] Defendant does not dispute that Gregory Tomczyscyn secured initial eligibility under the plan.

On August 25, 1981, Gregory was injured severely as a result of an occupational accident. Although there is some suggestion in the record that Gregory "may have attempted to return to work on one or two occasions in August or September, 1981,"[5] it is undisputed that he did not thereafter resume employment before his death in February, 1983.

On March 4, 1983, plaintiffs, through their attorney, notified the Fund of their request for death benefits.[6] By letter dated April 7th, trustee Robert E. Zimmer denied plaintiffs' request, stating that Gregory's death occurred after his eligibility for benefits under the plan had lapsed.[7] No further correspondence between plaintiffs and the Fund took place until plaintiffs filed this suit on August 29, 1983.

### The Contentions

In its motion for summary judgment, defendant first argues that plaintiffs have

1. This action arises under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Plaintiffs commenced suit in Philadelphia County's Court of Common Pleas. Jurisdiction was proper in the Court of Common Pleas under section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1). *See Livolsi v. Ram Construction Co., Inc.,* 728 F.2d 600 (3d Cir.1984). Defendant then removed the case to this court. Removal was proper under 28 U.S.C. § 1441(b).

2. Collective Bargaining Agreement between Air Master Corporation and Teamsters Union Local No. 115, 1980, Art. XXIII.

3. Teamsters Union Local No. 115 Health and Welfare Plan, 4, 11.

4. *Id.* at 6.

5. Affidavit of James Smith, ¶ 5.

6. Letter from Paul N. Sandler to Teamsters Union Local 115 Health and Welfare Fund (March 4, 1983).

7. Letter from Robert E. Zimmer to Paul N. Sandler (April 7, 1983).

failed to exhaust their right to appeal within the Fund. In response, plaintiffs argue that exhaustion should be excused because defendant failed to comply with a mandatory notice regulation promulgated under ERISA, and because the trustees' defense of this action shows that resort to the appeal process would be futile. In its reply brief, defendant argues that plaintiffs had notice of their rights because plaintiffs, who were represented by an attorney, had in their possession a copy of the Health and Welfare Plan benefit book which outlined the appeal procedure.

### Discussion

█ It is now settled law in this Circuit that the policy favoring exhaustion of non-judicial remedies applies in full measure to ERISA litigation. *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182 (3d Cir. 1984). The exhaustion requirement, as developed in other areas of labor law,[8] permits officials of labor unions and employee benefit plans to meet the responsibilities properly entrusted to them. At the same time, exhaustion serves to reduce the volume of ERISA litigation, and to define the issues and evidence for those cases that reach a judicial forum. *See generally Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980). *See also Grossmuller v. International Union, United Automobile, Aerospace and Agricultural Implement Workers,* 715 F.2d 853 (3d Cir.1983); *Wolfe v. J.C. Penney Company, Inc.,* 710 F.2d 388, 394 (7th Cir.1983); *Kross v. Western Electric Company, Inc.,* 701 F.2d 1238, 1243–1245 (7th Cir.1983); *Challenger v. Local Union No. 1 of the International Bridge, Structural, and Ornamental Ironworkers,* 619 F.2d 645 (7th Cir.1980).

In keeping with the strong policies supporting exhaustion, the courts have created few exceptions to the requirement. In general, claimants seeking benefits under an

ERISA plan will be excused from exhaustion only if the claimant is threatened with irreparable harm,[9] if resort to administrative remedies would be futile,[10] or if the claimant has been denied meaningful access to the plan's administrative procedures.[11]

In the instant case, plaintiffs argue that they should be absolved from their failure to comply with the Fund's appeals procedure because the Fund did not notify them of their right to appeal in the letter which denied their request for benefits. This argument raises two questions: first, whether the Fund's denial letter was deficient, and second, whether any deficiencies in the letter operate to excuse plaintiffs from the exhaustion requirement.

Considering the sufficiency of the Fund's denial letter, I note that the Secretary of Labor has promulgated regulations designed to ensure that ERISA participants and beneficiaries receive full and fair consideration of their claims. In relevant portion, those regulations state:

A plan administrator ... shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

(1) The specific reason or reasons for the denial;

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) *Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.*

29 C.F.R. § 2560.503–1(f) (emphasis added).

In light of the regulations promulgated by the Secretary, it is clear that the Fund's

---

**8.** *See generally Clayton v. International Union, United Automobile, Aerospace & Agricultural Implement Workers,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

**9.** *Lucas v. Warner & Swasey Company,* 475 F.Supp. 1071, 1074 (E.D.Pa.1979).

**10.** *Wolfe v. J.C. Penney Company, Inc.,* 710 F.2d at 394; *Amato v. Bernard,* 618 F.2d at 568.

**11.** *Lucas v. Warner & Swasey Company, supra* at 1074.

denial letter fails to apprise plaintiffs of their right to appeal.[12] The only statement in Mr. Zimmer's correspondence containing a hint that the ruling was not final was the invitation to plaintiffs' counsel to request "further information." Entirely lacking in the letter was information "as to the steps to be taken if the ... beneficiary wishes to submit his or her claim for review." [13]

The Fund argues, however, that plaintiffs had notice of their appeal rights because they and their attorney had access to the Health and Welfare Plan benefit book which described the appeal process. This argument is unpersuasive. The regulation governing notice to the plan beneficiaries makes no suggestion that plans can rely on provisions in a benefit book to substitute for notice of appeal rights in the denial letter itself. Indeed defendant's argument is refuted by the fact that the Secretary did permit plans not subject to section 302(c)(5) of the Labor Management Relations Act to rely on a collective agreement for such notice. 29 C.F.R. § 2560.503–1(b)(2).[14]

■ That plaintiffs were represented by counsel does not require a different result; nothing in the regulation suggests that its application is limited to cases in which claimants have no other means of learning of their right to appeal. In short, I am satisfied from the record now before me that the Fund's denial letter was deficient as a matter of law.

Turning to the consequences that flow from the Fund's omission, I must now determine whether plaintiffs are entitled to press the merits of their case in this court.

In support of plaintiffs' position is a decision rendered by the District Court for the Eastern District of Missouri. *Wesley v. Monsanto Company*, 554 F.Supp. 93 (E.D. Mo.1982), *aff'd* 710 F.2d 490 (8th Cir.1983). In that case, the court, after a bench trial, rejected an employee's attempt to overturn her employer's denial of disability benefits. The court relied both on evidence submitted by the employer's expert as well as the lack of medical testimony in the plaintiff's favor. In reaching its decision, the court rebuffed the employee's argument that the employer's arbitrariness was illustrated by its failure to provide adequate notice under the ERISA regulations. The court noted that both parties had proceeded informally. Moreover, the court stated:

failure to advise her husband of his need to make a timely election of benefits. Because the plaintiff's contractual claim rested on her interpretation of one provision of the plan's benefit book, I ruled that she could not ignore other provisions in the book which negated the plan's alleged duty to advise. I also rejected the plaintiff's argument that the plan had assumed a duty to counsel her husband.

Moreover, I held that the plan did not breach its fiduciary duty by failing to provide the plaintiff's decedent individual assistance in qualifying for benefits. I found that a lucid description of members' obligations in a benefit book satisfied the trustees' fiduciary obligation.

The case at bar, however, involves not the plan's generalized fiduciary obligation to all employees, but the content of notice to be provided to individual participants and beneficiaries who have unsuccessfully invoked the plan's benefits. In addition, the plan's obligation to provide notice of appeal rights is specifically addressed by statute and regulations promulgated thereunder. My decision in *Allen*, therefore, is not precedent for permitting the trustees to rely on notice provided by the benefit book on the facts of this case.

---

**12.** The text of Mr. Zimmer's letter read:

Please be informed that eligibility for benefits is based on active employment for which contributions have been made to the Health and Welfare Fund by the member's employer.

According to our records, Gregory Tomczyszyn was employed by Air Master Corporation on July 9, 1981 and last worked September 9, 1981. His employer made contributions to the Fund for a period of six months following his last day of work, which is the required amount.

These contributions would have provided Mr. Tomczyszyn with coverage for death benefits up to June 30, 1982. Since Gregory died after the last day of eligibility, the Health and Welfare Fund cannot be responsible for a death benefits payment to his beneficiaries.

If further information is needed regarding the above matter, please contact our office.

**13.** Indeed, at oral argument, counsel for the Fund candidly conceded this point.

**14.** This court's decision in *Allen v. Atlantic Richfield Retirement Plan*, 480 F.Supp. 848 (E.D.Pa. 1979), *aff'd Mem.*, 633 F.2d 209 (1980), is not to the contrary. In that case, the widow of a deceased employee sought death benefits, claiming that an ERISA plan violated fiduciary and contractual obligations because of the plan's

To the extent defendant's failure to comply with the procedures outlined in the Plan and the statute and regulations is relevant, the effect is merely to excuse plaintiff's failure to exhaust her administrative remedy, particularly since plaintiff makes no contention that she had any evidence additional to that which she introduced at the trial of this case.

554 F.Supp. at 97 (footnote omitted).

To the contrary are the decision of the Seventh Circuit Court of Appeals in *Challenger v. Local Union No. 1 of the International Bridge, Structural and Ornamental Ironworkers,* 619 F.2d 645 (7th Cir. 1980) and the opinion of Judge Bechtle of this court in *Lucas v. Warner & Swasey Company,* 475 F.Supp. 1071 (E.D.Pa.1979).

In *Challenger,* the court held that an employee's suit to obtain pension benefits was properly dismissed because the claim was subject to a compulsory arbitration provision. In reaching its decision, the court found meritless the plaintiff's contention that arbitration should be excused because the plan failed to comply with the notice regulations promulgated under ERISA. After expressing doubt as to whether the plaintiff had properly filed a claim, the court reasoned:

> Even assuming that [a claim was filed], the appropriate remedy would not be to dispense with compulsory arbitration but rather to extend the applicant's time for taking the appropriate steps.

619 F.2d at 648.

Judge Bechtle employed similar reasoning in dismissing a claim for pension benefits in *Lucas.* There, the plaintiff argued that exhaustion should be excused because his employer failed to comply with notice requirements established by a collective agreement. The notice requirements were equivalent to, and indeed seem patterned after, the ERISA guidelines involved in this case.[15] Although the employer violated the notice provisions of the collective agreement, the suit was nevertheless dismissed

for failure to exhaust internal remedies. The opinion recognized that the dispositive issue was not whether the plaintiff or defendant was at fault, but whether there existed sufficient cause to dispense with a nonjudicial hearing.

■ On balance, I find the decisions favoring exhaustion in this context more persuasive. The policies supporting the exhaustion requirement apply equally to plaintiffs' claim even though a procedural irregularity within the Fund may have contributed to their premature attempt to secure judicial relief. The trustees of the Fund are entrusted with the responsibility of deciding in the first instance the merits of requests for benefits, and they must be given the opportunity to fulfill that office.

The policy of exhaustion is particularly compelling on the facts of the case before me. The Health and Welfare Plan in effect at Gregory's death provided life insurance coverage if the decedent had presented proof of total and permanent disability within one year of his disability, and yearly thereafter,[16] but the trustees were never provided with evidence of the fulfillment of that condition. The claim letter filed by plaintiffs' lawyer mentioned only Gregory Tomczyscyn's death and the decedent's affiliation with Local 115. It did not inform the trustees of Gregory's alleged disability or the medical record which plaintiffs have since advanced in support of that contention. The trustees were likewise not apprised of plaintiffs' evidence that Gregory had continued to receive benefits from the Fund after his eligibility allegedly expired. I am unable to say with certainty that, if presented with this evidence, the trustees would affirm the decision reached by Mr. Zimmer on the basis of the inadequate record before him.

Moreover, even if the trustees adhere to the initial determination, their consideration of this case on the merits will greatly enhance my ability to review the rationale of their ultimate decision. The Fund's cur-

---

**15.** *See Lucas v. Warner & Swasey Company, supra* at 1075, n. 3.

**16.** Health and Welfare Plan, 11.

rent position is supported only by the brief denial letter of Mr. Zimmer and an affidavit submitted by James Smith, an administrative assistant to the trustees. A reasoned disposition of plaintiffs' contentions on behalf of all the trustees would provide a far more suitable basis for exercise of the limited judicial review mandated for cases of this sort.

I find still further support for this conclusion in the decision of the Court of Appeals for the Third Circuit in *Grossmuller v. International Union, United Automobile, Aerospace & Agricultural Implement Workers, Local 813,* 715 F.2d 853 (3d Cir.1983). In *Grossmuller,* the court of appeals ruled that a pension plan retained primary responsibility for determining a claimant's eligibility despite findings that the plan was guilty of procedural violations more serious than alleged in the case at bar. Describing the procedure there employed, the court stated:

> The district court found that, in a letter dated August 15, 1977, the local board informed Grossmuller only that his benefits had been terminated on the ground that he was found to be gainfully employed. The board did not state upon what evidence it relied or invite Grossmuller to examine that evidence or to submit written comments or rebuttal documentary evidence. The board made no effort to ascertain any other facts or to interview Grossmuller himself. The appeal form sent to Grossmuller also did not provide him with any explanation of the factual basis used to support the decision or the manner by which he could challenge it. Finally, the district court found that the local board also violated its own past, unwritten practice by allowing a third party, [a] detective, to appear before it, even though it had refused Grossmuller's request to do likewise.

> The district court correctly concluded from these findings that the absence of any written claims procedures, as well as the inadequacy of the pension plan's unwritten practices, deprived Grossmuller

of the protections afforded by ERISA for his interests in the pension plan.

715 F.2d at 858.

The court of appeals affirmed the district court's order requiring reinstatement of the claimant's benefits. Nevertheless, the court remanded the case for clarification of the injunctive order, and instructed the district court to permit the plan to terminate the claimant's benefits if the plan, with court approval, adopted acceptable procedures. The court of appeals reasoned:

> The question of Grossmuller's eligibility should be resolved by the plan in the first instance, not by the court, ... and the procedural deficiencies in the plan's claim process will not estop the plan from taking into account Grossmuller's alleged gainful employment prior to October 12, 1977.

715 F.2d at 859. *See also Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir. 1980), *cert. denied,* 499 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

In sum, both relevant precedent and the facts of this case persuade me that the merits of plaintiffs' case should first be presented to the trustees of the Health and Welfare Fund through its appeals process.

Plaintiffs' final argument is that resort to the Fund's appeals procedure at this time would be futile. In support of that contention, plaintiffs point to the Fund's continued denial of their request for benefits and the fact that the trustees have opposed their claim in this lawsuit.

Plaintiff's argument is not without substance. The affidavit prepared by Mr. Smith and the denial letter of Mr. Zimmer strongly suggest that the trustees would deny plaintiffs' claim on appeal. Nevertheless, I am not satisfied from the record now before me that the trustees' position has become so fixed that an appeal would serve no purpose. *Cf. Goclowski v. Penn Central Transportation Company,* 571 F.2d 747, 758 (3d Cir.1977). *See also Glover v. St. Louis—San Francisco Railway Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). Mr. Zimmer's brief denial notice was drafted without benefit of the informa-

tion which plaintiffs have made known to the trustees, apparently for the first time, in this lawsuit. Moreover, the trustees' position as elucidated through their attorneys' memoranda of law and Mr. Smith's affidavit was necessarily formulated in the context of litigation.[17] I cannot disregard the possibility that the trustees' litigation position reflected, at least in part, an institutional resistance to federal judicial intrusion. The trustees should have the opportunity to consider, in their discretion, whether Gregory Tomczyscyn was disabled and whether sufficient notice of such disability was provided. Requiring plaintiffs to exhaust their right of appeal to the trustees would serve that function.

Because the merits of plaintiffs' claims should be considered initially by the trustees of the Health and Welfare Plan, I will grant defendant's motion for summary judgment on the ground of failure to exhaust internal Fund remedies, but, because of defendant's failure to provide plaintiffs notice of their right to appeal, the order will be without prejudice to plaintiff's right to commence a second action if plaintiffs take such appeal within sixty (60) days after entry of this order and if the trustees thereafter continue to deny benefits.

---

**17.** This is not a case, as was *Goclowski*, where the plaintiffs have made repeated attempts to secure the desired relief from nonjudicial sources, only to experience consistent rejection.