Cecil WHITE, Plaintiff–Appellant,

v.

JACOBS ENGINEERING GROUP LONG TERM DISABILITY BENEFIT PLAN, et al., Defendants–Appellees.

No. 88–6485.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1989.

Decided Oct. 6, 1989.

As Amended on Grant of Rehearing Feb. 14, 1990.

Ronald Dean, Pacific Palisades, Cal., for plaintiff-appellant.

David L. Bacon, Adams, Duque & Hazeltine, Los Angeles, Cal., for defendants-appellees.

Before FLETCHER, NELSON and NORRIS, Circuit Judges.

NELSON, Circuit Judge:

### Overview

Defendant Jacobs Engineering Group Long Term Disability Plan ceased paying benefits to Plaintiff–Appellant White after notifying him that he was no longer entitled to them because he did not meet the plan's definition of total disability. White sued defendants to recover benefits allegedly due to him and for reinstatement of benefit payments. The district court granted summary judgment to the defendants on the ground that White failed to exhaust his administrative remedies by filing a written appeal within 60 days after receiving notice of denial of benefits. It also granted summary judgment to the defendants on their counterclaim for benefits paid while White allegedly was not totally disabled. White argues that the Plan does not establish a 60–day limit on the appeal period because the appeal period is mentioned only in the Summary Plan Description and in letters sent to recipients terminating benefits; that even if there is a 60–day time bar, the benefit termination letters to White did not trigger it because they failed adequately to notify White of the specific reasons for termination, as required by ERISA and Department of Labor (DOL) regulations; and that the defendants were not entitled to recover on their counterclaim because they failed to submit any evidence supporting the amount claimed. We find that although the Plan establishes a 60–day time bar, it was not triggered by the inadequate termination notice. Therefore, appellant did not exhaust his administrative remedies, and jurisdiction in the district court was improperly granted. We reverse both grants of summary judgment and remand to the district court with instructions to remand to the plan appeals board for a determination on the merits.

### Factual and Procedural Background

Appellant is a former employee of Jacobs Engineering and was, until the events that gave rise to this action, a participant of Jacobs Engineering Group Long Term Disability Benefit Plan, which is governed by ERISA. The plan was administered by an outside firm named Self Insurance Programs, Inc. (SIP), later called Adjustco.

In October, 1980, appellant filed a claim for long term disability benefits because of a heart condition. His claim, after an initial denial, was approved, and the plan paid benefits to appellant retroactively to December, 1980. In May, 1983, the Plan withheld benefits pending a medical update and proof of continued receipt of social security benefits. In July, 1983 appellant provided this information and the plan reinstated his benefits. In December, 1983, Adjustco wrote to appellant requesting another copy of his Social Security check. Appellant did not respond, and Adjustco wrote to him again in January, 1984 requesting information. At this time, Adjustco retained an investigatory agency, Equifax, to locate appellant and determine whether he continued to qualify for disability benefits. On February 3, 1984, Adjustco wrote to White saying that it had "information about [his] activities as they relate to possible gainful employment," that it had decided to withhold benefits pending the outcome of an investigation, and that "any information

[he wished] to provide concerning [his] activities over the past few years" was welcome. The letter did not relate any of the specific information Equifax had obtained. On February 7, 1984, appellant telephoned Adjustco in response to its letter and the cessation of benefits payments to ask what information Adjustco wanted. Appellant denied that he had been gainfully employed, that he owned a working farm, and that he was involved in oil leasing. The Adjustco representative told appellant to send everything he had regarding clarification.

In June, 1984, Adjustco wrote a letter to Jacobs Engineering summarizing its conclusions based on Equifax's investigation of appellant. The letter stated in part: "There are indications of his employment in running a gas station/store, oil leasing and farming/cattle raising. Of special significance is the indication that his income in 1981 was in excess of $63,000.00." On July 20, 1984, five months after ceasing to pay him benefits, Adjustco wrote to appellant, stating that "information in [its] file" indicated that appellant was engaged in gainful employment and that it had concluded that he was not entitled to benefits. Again, the letter failed to refer to the specific activities Adjustco believed appellant had engaged in or to specific evidence on which Adjustco relied. The letter stated that Adjustco was denying further benefits and stated that it had overpaid benefits at least in the amount of $11,568, the amount it had paid during 1981. Receiving no response, Adjustco wrote to White again on October 22, 1984. Adjustco wrote another letter to White dated March 20, 1985, which he received on April 1, 1985. The letter enclosed copies of the previous letters and informed White that he had 60 days to appeal.

White did not file a written appeal within 60 days, but attempted to find a lawyer. On June 28, 1985—twenty-nine days late— an appeal was filed. Jacobs Engineering replied several weeks later, stating that the appeal would not be considered because it was 29 days late, and again requesting that White pay the benefit plan $11,568. White filed suit in 1987.

## Discussion

### I. *Sixty-day time bar on filing an appeal*

The DOL regulations authorize "[a] plan [to] establish a limited period within which a claimant must file any request for review of a denied claim." 29 C.F.R. § 2560.503–1(g)(3). The summary plan description given to Jacobs Engineering employees and the termination letter sent to appellant state that plan participants have 60 days from the date of receiving notice of an adverse decision to appeal. Appellant appealed 89 days after receiving notice of benefits termination. Appellant argues that his claim is not time-barred because the plan itself does not establish a 60–day appeal period. Appellant does not argue that he was unaware that the termination letters and summary plan description mentioned a 60–day limit; nor does he argue that he knew or relied on the fact that the document to which he refers as the plan, which was not distributed to employees, does not limit the period of appeal. Rather, he contends that the plan itself does not contain a provision limiting the appeal period, that the summary plan description misconstrues the plan document by adding the limitation, and that his claim therefore is not time-barred.

Appellant relies on language in ERISA and the DOL regulations mandating that the summary plan description describe the plan's provisions accurately. ERISA requires that the summary plan description "be sufficiently accurate and comprehensive to reasonably apprise … participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). The DOL regulations interpreting this statutory provision state that the "summary plan description must accurately reflect the contents of the plan." 29 C.F.R. § 2520.102–3. If the summary plan description must reflect the contents of the plan accurately, appellant's logic goes, the summary cannot add new provisions.

Appellees, on the other hand, argue that the "plan" consists of a series of doc-

uments that *includes* the summary plan description. Therefore, they argue, the 60–day limitation in the summary is part of the plan and may be imposed on appellant.

Appellant's argument that the regulations allow the summary plan description only to describe and not to supplement the plan fails. As both parties neglected to note, the DOL regulations explicitly recognize that a summary plan description may include a modification of the plan terms; indeed, the regulations excuse separate filing of the modification when the modification is "[i]ncorporated in a summary plan description or supplement" properly filed with the Secretary of Labor. 29 C.F.R. § 2520.104a–4(b)(2)(i). Therefore, the inclusion in the summary plan description of a new plan term that otherwise meets the filing and disclosure requirements for modifications of ERISA plans does not violate the statutory and regulatory provisions mentioned above requiring summary plan descriptions to be accurate. This accords with the legislative history of 29 U.S.C. § 1022(a)(1), which reveals that the legislators were concerned with the problem of employee reliance on summary plan descriptions that *omit* or *mischaracterize* plan terms when they drafted the accuracy requirement. *See, e.g.,* H.Rep. No. 93–533, 93rd Cong., 2d Sess. 3, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4646.[1] The legislators did not express concern over the "problem" of using the summary plan description as a vehicle by which to notify participants fully and accurately of new plan provisions.

■ Thus, a provision in the summary plan description can establish a new plan term if it meets all the statutory, regulatory, and plan requirements for modifying the plan. The provision in the summary contested in this case, the 60–day appeal period, meets all the statutory and regulatory requirements for modification. ERISA requires that the plan administrator

file modifications with the Secretary of the Department of Labor. 29 U.S.C. § 1021(b)(3). "Any material modification in the terms of the plan" must be filed "within 60 days after such modification ... is adopted or occurs." 29 U.S.C. §§ 1022(a)(2), 1024(a)(1)(D). As mentioned above, however, the regulations excuse the requirement of filing a modification if it is "[i]ncorporated in a summary plan description or supplement filed with the Secretary of Labor pursuant to § 2520.104a–3." 29 C.F.R. § 2520.104a–4(b)(2)(i). Thus, if the summary plan description containing the 60–day time bar was properly filed, the modification was properly filed. Appellants have not summoned, nor have we found in the record, evidence to the contrary.

ERISA applies the same 90–day period to distribution of a summary of any material modification in the terms of the plan that it applies to distribution of the summary plan description. 29 U.S.C. § 1024(b)(1). The record indicates that the summary plan description including a statement that the appeal period is 60 days was timely distributed. Accordingly, the 60–day appeal provision met the ERISA timing requirements for disclosure of modifications to plan participants and beneficiaries.

■ The only other requirement ERISA imposes on plan administrators with respect to modifications is that a summary of "any material modification in the terms of the plan ... "be written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a)(1). The explanation in the summary plan description of the appeal period limitation and the appeal procedure is quite clear. It states:

> If you disagree with the determination made on your claim, you have the right

---

1. The House Report explains:
   Descriptions of plans furnished to employees should be presented in a manner that an average and reasonable worker participant can understand intelligently. It is grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, or if these conditions were stated in a misleading or incomprehensible manner in plan booklets.
   1974 U.S.Code Cong. & Admin.News at 4646.

to request a thorough review of the decision.

The procedure is as follows:

1. Within sixty (60) days after you receive written notice of the initial determination on your claim, you must file a *written* request for a review.

2. The review request should include any additional facts and documentation which will support your claim. For your assistance, you may:

   - Request a copy of the Plan Document and all of the records pertaining to your claim;

   - Ask for further explanation of the pertinent Plan provisions and the reason for the initial determination;

3. Your *written* request for a review must be mailed to: [address given].

Jacobs Engineering Group Long Term Disability Benefit Plan Summary Plan Description (1/1/78).

The explanation is sufficiently clear. For the above reasons, we hold that the plan established a 60–day time bar.

## II. *The termination notice was inadequate*

■ The benefits termination notice was inadequate because it did not meet the statutory and regulatory requirements of specificity. Section 503 of ERISA provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

DOL regulations require plan administrators to

provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

(1) *The specific reason or reasons for the denial;*

(2) *Specific reference to pertinent plan provisions* on which the denial is based;

(3) *A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;* and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f).

Adjustco's letters to White failed to meet the requirement of specificity. They offered only a conclusion that White had been gainfully employed, citing no reasons or evidence other than "information" in Adjustco's files. Several courts have held that such conclusory statements regarding a claimant's ineligibility for benefits do not satisfy the notice requirements. In a case in which the appeals board sent a similarly worded termination notice to a claimant, the Third Circuit affirmed the district court's holding that the termination notice was insufficiently specific and therefore denied the claimant procedural due process. In *Grossmuller v. Budd Co. Consol. Retirement Benefit Plan for Employees*, 547 F.Supp. 111 (E.D.Penn.1982), *aff'd in part, rev'd in part on other grounds*, 715 F.2d 853 (3d Cir.1983), the court held:

[T]he plaintiff was merely informed by The Local Board that his benefits were being terminated on the ground that he was found to be gainfully employed. The letter did not apprise him of the alleged employment which had lead the Local Board to believe his benefits should be terminated.... Accordingly, the ... letter did not comply with the provisions of § 2560.503–1(f)....

*Id.* at 114–15.

In *Wolfe v. J.C. Penney Co.*, 710 F.2d 388 (7th Cir.1983), the Seventh Circuit also

held that such conclusory statements, unaccompanied by reasons or an explanation of the evidence on which the plan administrator relied, are inadequate. The court held that the termination letter's statement that " '[t]he medical information in our file does not indicate that sickness or bodily injury ... caused you to stop working,' " *id.* at 391 n. 3 (quoting the benefits termination letter), was "not a reason but a conclusion," *id.* at 392. The court noted that the claim adjustor stated his reasons for denying the claim quite clearly in a memorandum to his supervisor, and observed that "[a]n explanation along the lines provided in the memorandum would have apprised Wolfe of the reason for the denial, alerted him to the deficiency of the record accompanying his claim, and thereby aided him in building his claim with additional evidence." *Id.*

Similarly, the Eighth Circuit held in *Richardson v. Central States, S.E. & S.W. Areas Pension Fund,* 645 F.2d 660 (8th Cir.1981), that "[b]ald-faced conclusions do not satisfy [the requirement that the board give specific reasons for its decisions.]" *Id.* at 665. The court quoted from the letter sent to the claimant: " '[i]t was the trustees [sic] decision that credit could not be granted ... as the Committee considers this to be self-employment.' " *Id.* The court concluded: "This falls well short of the level of acceptability. Neither the Committee of Trustees nor [the administrator] explained *why* they did not consider Richardson's employment creditable. No factors of Richardson's employment with [a particular company] were mentioned as indicia of self-employment." *Id.* (emphasis in original). Relying on *Richardson,* the Eighth Circuit held in *Short v. Central States, S.E. & S.W. Areas Pension Fund,* 729 F.2d 567 (8th Cir.1984), that a "conclusory finding of nonemployee status" was insufficient to meet the requirements for benefits termination notices. *Id.* at 575.

Like the benefits termination notices at issue in *Grossmuller, Wolfe, Richardson,* and *Short,* appellees' notice to White offered an unsupported conclusion regarding ineligibility for benefits, citing only "information in our files" that White was "gainfully employed." As in *Wolfe,* the employer had in its possession at the time the notice was sent investigatory reports and a memorandum carefully detailing the bases for the employer's determination. *See Wolfe,* 710 F.2d at 392.

The letter also failed to cite specifically the pertinent plan provisions on which the denial was based, as is required by 29 C.F.R. § 2560.503–1(f)(2). "Without a citation to the Plan provisions, plaintiff[ ] had no opportunity to comprehend fully the reason for the denials and to know what deficiencies [his application] must overcome to be successful on appeal." *Brown v. Babcock & Wilcox Co.,* 589 F.Supp. 64, 71 (S.D.Ga.1984). Nor did the letter adequately inform the appellant of the type of information he should submit to perfect his claim, as is mandated by 29 C.F.R. § 2560.503–1(f)(3). The vague observation made in a pre-termination letter that "any information you wish to provide concerning your activities over the past few years [is welcome]" does not satisfy the requirement that the notice "specify with some detail what type of information would help to resolve [the questions regarding eligibility for benefits], and how the applicant should present such information." *Wolfe,* 710 F.2d at 393 (holding that where "[t]he only type of information which the denial letter indicate[d] [the claimant] should supply [was] 'medical information,' " the letter violated 29 C.F.R. § 2560.503–1 and 29 U.S.C. § 1133).

For the reasons above, the notice was inadequate.

### III. *Inadequate notice did not trigger the 60–day time bar*

Appellant argues that the termination notice could not trigger the 60–day time bar because it was inadequate, and that the appeals board therefore must hear his case. We agree. When a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is not triggered. *Challenger v. Local Union No. 1 of Internat'l Bridge, Structural, & Ornamental Ironworkers, AFL–CIO,* 619 F.2d 645, 648 (7th Cir.1980) (refusing juris-

diction and requiring the claimant to exhaust his administrative remedies). The *Challenger* court stated that if the notice had been inadequate, "the appropriate remedy would not be to dispense with compulsory arbitration (the appeal procedure required by the plan) but rather to extend the applicant's time for taking the appropriate steps." *Id.*

The statutory mandate to plan administrators to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review" supports this result. 29 U.S.C. § 1133(2). The legislators regarded claimants' awareness of the specific reasons for denial of their benefits as sufficiently important to their ability to obtain full and fair reviews of their claims to require explicitly that plans enumerate the reasons in the written notice of the right to appeal. 29 U.S.C. § 1133(1). To allow plan appeal boards to bar a claimant's untimely appeal when the claimant was improperly notified of his or her right to appeal would circumvent this policy. Plan boards could with impunity deter claimants from timely appealing by sending vague and inadequate appeal notices, withholding information claimants need to appeal effectively.

The regulations promulgated by the DOL reveal the same policy and provide authority by analogy for the holding that inadequate notice does not trigger a plan's time bar to appeal. The regulations state:

(1) If a claim is wholly or partially denied, notice of the decision, *meeting the requirements of paragraph (f) of this section,* shall be furnished to the claimant within a reasonable period of time after receipt of the claim by the plan.

(2) *If notice of the denial of a claim is not furnished in accordance with paragraph (e)(1) of this section within a reasonable period of time, the claim shall be deemed denied and the claimant shall be permitted to proceed to the review stage.*

29 C.F.R. § 2560.503–1(e) (emphasis added). Paragraph (f) is the paragraph quoted *supra,* requiring benefits denial letters to give specific reasons, cite specific plan provisions, suggest additional information the claimant should provide, and explain appeal procedures. Thus, the regulations hold that if a plan fails to provide adequate notice within a reasonable time, the claimant's claim is deemed denied and the claimant is allowed access to the plan's review procedure. The regulations do not state whether a claimant's right to review under such circumstances trumps a plan's appeal deadline. These regulations do, however, like section 1133, reveal a purpose to aid claimants in avoiding the obstacles a plan may place in their paths to the appeals board. Our holding that inadequate notice does not trigger a time bar accords with this policy.

■ Appellees argue that to hold that inadequate notice did not trigger the time bar would contravene the policy supporting exhaustion of administrative remedies and would be inefficient. The argument fails. Appellees rely primarily on *Tiger v. AT & T Technologies Plan for Employees' Pensions, Disability Benefits,* 633 F.Supp. 532 (E.D.N.Y.1986). In *Tiger,* the court held that absent equitable considerations, a claimant's failure to pursue administrative remedies within the 60–day appeal period mandated by the plan precluded judicial review of his underlying claim for benefits. *Id.* at 534. The court cited benefit plans' interest in financial security and avoidance of stale claims. *Id.* This holding has little bearing on the issue whether inadequate notice should trigger a plan's time-bar to appeal, for several reasons. First, the plaintiff in *Tiger* did not allege that the notice of the right to appeal was inadequate, or any other procedural defect; he offered no reason why he should be permitted to avoid the time bar. Indeed, the *Tiger* court's observation that equitable considerations might be sufficient to overcome the time bar actually supports White's reasoning; inadequacy of notice is such an equitable consideration. Second, holding that inadequate notice does not trigger a plan's time bar will not create a significant problem of stale claims, as the *Tiger* court feared would occur if claimants were permitted to avoid time bars without

offering valid excuses for their delays. Plan administrators have the power, and will have the incentive, to avoid the contingent liability of stale claims by ceasing to rely on benefit termination form letters and giving adequate, specific notice. Third, the plaintiff in *Tiger*, unlike White, sought a district court adjudication of the merits. White seeks a much less drastic remedy— only to be permitted to avail himself of the claims review procedure. Like this Court's own decision in *Amato v. Bernard*, 618 F.2d 559 (9th Cir.1980), the only significance of *Tiger* for this case is to establish that courts generally should require exhaustion of administrative remedies before assuming jurisdiction.[2]

▪ Because we hold that the inadequate notice did not trigger the plan's time bar to appeal, we reverse the grants of summary judgment on the claim and counterclaim on the ground that jurisdiction was improperly granted, and remand to the district court with instructions to remand to the plan appeals board for adjudication on the merits. *See Challenger*, 619 F.2d at 648. Plaintiffs in ERISA litigation who prevail on significant issues are generally entitled to reasonable attorney fees. *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984). This is particularly true where, as here, the opposing party is well situated to satisfy an award of fees. *Id.* at 590. Since no special circumstances which would warrant deviation from this rule exist in this case, appellant is entitled to attorney fees in an amount to be determined by the district court.

---

**2.** *Amato*, like *Tiger*, specifically recognized that equitable considerations excuse the exhaustion requirement. The court stated that it would be an abuse of discretion for a court not to excuse the exhaustion requirement when resort to the plan's procedures would be futile or the claimant is denied meaningful access to the procedures. *Amato*, 618 F.2d at 568 (citing *Winter-*

*berger v. General Teamsters Auto Truck Drivers & Helpers Local Union 162*, 558 F.2d 923, 925 (9th Cir.1977)).