**Samuel A. RUSSO, Administrator of the Estate of Eric B. Fountain**

v.

**ABINGTON MEMORIAL HOSPITAL HEALTHCARE PLAN c/o Pension Committee, Abington Memorial Hospital,**

**and**

**United States Healthcare Systems of Pennsylvania, Inc. a/k/a US Healthcare, Inc.. and d/b/a HMO of Pennsylvania.**

Civ. A. No. 94–195.

United States District Court, E.D. Pennsylvania.

Oct. 5, 1995.

Marybeth McCabe, Gilfillan, Gilpin & Brehman, Jenkintown, PA, for Samuel A. Russo.

Michael F. Kraemer, White & Williams, Philadelphia, PA, Stephen A. Ryan, Bala Cynwyd, PA, for Abington Memorial Hospital.

Noreen M. Walsh, Buchanan Ingersoll Professional Corporation, Philadelphia, PA, for U.S. Healthcare.

## *MEMORANDUM*

### LOUIS H. POLLAK, District Judge.

Before the court are separate motions by the defendants, Abington Memorial Hospital Healthcare Plan and United States Healthcare Systems of Pennsylvania, Inc., to dismiss aspects of the complaint of Samuel A. Russo, the administrator of the estate of Eric B. Fountain.

### I

As is usual in considering a motion to dismiss, the following account of the facts of this case will assume that the facts are as alleged in Mr. Russo's complaint. This case arises from a dispute about who is to pay for the very large medical bills allegedly incurred by Mr. Fountain following his admission to the Albert Einstein Medical Center on or about January 22, 1990 as a result of a stab wound. Mr. Fountain was hired as an employee of the Abington Memorial Hospital on October 18, 1989, and hence received health insurance coverage through the hospital's health insurance plan, the Abington Memorial Hospital Healthcare Plan ("Abington Healthcare Plan," or "the Plan"), one of the defendants in this case. The Plan offered two forms of health-care benefits: a traditional, or "indemnity," insurance plan self-funded by Abington Memorial Hospital, and a health maintenance organization plan provided through an agreement between Abington Healthcare Plan and United States Healthcare Systems of Pennsylvania, Inc. ("U.S. Healthcare"), the other defendant.

Russo alleges that Fountain became eligible for Abington Healthcare Plan benefits on January 1, 1990, and that Albert Einstein Medical Center's employees were told that Fountain was covered under the Plan's indemnity policy when he was admitted to the hospital. After Fountain's admission, however, Russo alleges that employees of Abington Memorial Hospital "directed, encouraged, assisted and/or aided a family member of Fountain's to sign and backdate a [U.S. Healthcare] enrollment form so that the effective date of the [U.S. Healthcare] enrollment would be January 1, 1990." Amended Complaint, ¶ 18. Fountain remained in the hospital for two months, purportedly incurring a hospital bill in the amount of $291,-233.05. (The itemized bill, which is attached to the Amended Complaint as an exhibit, is some fifty pages in length.) U.S. Healthcare allegedly paid a portion of Fountain's medical bills but refused to pay the remainder; it is not clear whether Fountain ever made a claim under Abington Healthcare Plan's indemnity policy.

Fountain died some months after leaving the hospital, in September 1990. Russo was appointed as the administrator of Fountain's estate in August 1993. Russo then proceeded to seek information on Fountain's insurance coverage from both Abington Memorial Hospital and U.S. Healthcare. Through his attorney, he wrote letters to Abington Memorial Hospital's Human Resources Department in September and October 1993, requesting information on Fountain's insurance coverage and personnel records, specifically including "any applicable benefit booklet or other information regarding healthcare benefits available through Mr. Fountain's employment with Abington Memorial Hospital." Amended Complaint, exhibit C. Russo's complaint alleges that he has never received this benefit booklet.[1] Russo also wrote a letter to U.S. Healthcare, in September 1993, seeking, *inter alia,* information on Fountain's enrollment in U.S. Healthcare, information on the payment or denial of any medical bills, and "the benefits booklet in effect for Mr. Fountain's policy." Amended Complaint, exhibit F. U.S. Healthcare's response, in November 1993, did not provide a copy of the applicable benefits booklet; instead, it denied that Fountain had ever been properly enrolled in U.S. Healthcare, as his application

---

1. Elsewhere, Russo states that he received no information from the Abington Healthcare Plan about the Plan before May 22, 1995, when he received some materials in response to a discovery request. *See* Plaintiff's Motion in Response to Abington Healthcare Plan's Motion to Dismiss at 8.

had been filled out after his admission to the hospital.

Russo then, in December 1993, filed a complaint in the Court of Common Pleas of Philadelphia County that made claims under Pennsylvania law against Abington Memorial Hospital and U.S. Healthcare. U.S. Healthcare filed a timely notice of removal, invoking this court's diversity jurisdiction. In a previous memorandum, dated March 29, 1995, this court (1) denied a motion to remand by Russo, and (2) granted a motion to dismiss by U.S. Healthcare, on the grounds that the state-law claims alleged in Russo's complaint were preempted by the Employee Retirement Income Security Act ("ERISA"). The court also granted Russo leave to submit an amended complaint, however, which Russo did.

The amended complaint alleges four ERISA claims, two against Abington Healthcare Plan (rather than Abington Memorial Hospital, the previously named defendant) and two against U.S. Healthcare. Russo's first claim against Abington Healthcare Plan is grounded in the Plan's alleged failure to provide Russo with Fountain's benefit booklet, in violation of ERISA's requirement that the administrator of a plan provide plan information to beneficiaries upon request.[2] Under 29 U.S.C. § 1132(c)(1), a plan administrator can be liable to a beneficiary for up to $100 a day for such failures.[3] Russo's second claim against the Plan invokes ERISA to challenge the Plan's alleged role in Fountain's attempted enrollment, as well as the Plan's failure to pay benefits to Fountain under its own indemnity policy.[4]

Russo makes broadly parallel claims against U.S. Healthcare. As he does against Abington Healthcare Plan, Russo makes a claim against U.S. Healthcare invoking 29 U.S.C. § 1132(c)(1) to challenge U.S. Healthcare's failure to provide plan information. Russo also asserts that U.S. Healthcare "has breached its fiduciary duty to Fountain by denying coverage for Fountain's AEMC [Albert Einstein Medical Center] bill" and "has violated ERISA by arbitrarily and capriciously administering the Plan and by denying coverage for Fountain's AEMC bill." Complaint, ¶ 34, 35.

2. Russo cites generally to 29 U.S.C. §§ 1022–24 for this proposition. The particular provision upon which the plaintiff presumably relies is 29 U.S.C. § 1024(b)(4), which provides:

The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

3. The section provides:

Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days of such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and

the court may in its discretion order such other relief as it deems proper.
29 U.S.C. § 1132(c)(1).

4. The claim is a fairly elaborate one, and, as its details are not at issue in the present motions to dismiss, they will not be set forth in full here. It is presumably brought under both 29 U.S.C. § 1132(a)(1), which permits actions for the recovery of benefits, and 29 U.S.C. § 1132(a)(2), which permits actions for breach of fiduciary duties. The former section, § 1132(a)(1), provides: "A civil action may be brought (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." The latter section permits actions "by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 of this title"; section 1109, in turn, imposes liability upon fiduciaries for breach of fiduciary duty.

It is possible that Russo also intends to make a claim under § 1132(a)(3), which permits a civil action to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

U.S. Healthcare has moved to dismiss both of Russo's claims against it. U.S. Healthcare asserts that Russo's claim that it wrongfully failed to pay benefits to Fountain is barred because Russo (and Fountain) failed to exhaust the available § 1133 administrative remedies, a prerequisite to bringing a claim under ERISA. U.S. Healthcare also asserts that it cannot be subjected to a claim based upon a violation of 29 U.S.C. § 1132(c)(1)— the directive to furnish requested plan information—as that statute only penalizes "administrators" who fail to respond to requests for information from beneficiaries, and U.S. Healthcare does not fit within ERISA's definition of an "administrator".

Abington Healthcare Plan has also moved to dismiss Russo's two claims against it. The Plan asserts that Russo's claim that it failed to provide him with plan information is a "transparent attempt ... to convert his discovery request under Rule 34 of the Federal Rules of Civil Procedure into an independent cause of action." Defendant Abington Healthcare Plan's Motion to Dismiss at 3–4. As to Russo's other claim against Abington Healthcare Plan, the Plan asserts that, if Russo's claim based upon U.S. Healthcare's denial of benefits to Fountain is dismissed, Russo's claim against Abington Healthcare Plan must also be dismissed, as the underlying dispute is one that cannot be adjudicated fairly unless all three parties are present.

## II

ERISA requires that employee benefit plans "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The courts have concluded, based upon this provision and upon an analysis of the structure and policies of ERISA, that 29 U.S.C. § 1132, the provision of ERISA that permits plaintiffs to bring a claim for deprivation of ERISA-protected benefits, incorporates an exhaustion requirement. That is, the courts have uniformly found that a plaintiff must exercise his or her right to seek a "full and fair" review under section 1133 before bringing a claim under section 1132. *See Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 185 (3rd Cir.1984); *Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980).

U.S. Healthcare's assertion that Fountain and Russo have failed to exhaust their administrative remedies under ERISA appears to be correct; there is no indication that either Fountain or Russo pursued an administrative appeal of U.S. Healthcare's refusal to pay Fountain's benefits. Russo argues, however, that he should be excused from the exhaustion requirement, for three reasons: because U.S. Healthcare has denied him meaningful access to its administrative appeal procedures; because it would be "futile" for him to pursue his administrative remedies; and because it is not clear that, under Abington Healthcare Plan's employee benefit plan, it is in fact U.S. Healthcare's administrative appeal procedure that he is required to exhaust.[5] Because this court will endorse the first of these arguments, and so excuse Russo from the exhaustion requirement, it is not necessary to discuss the others in detail.

■ Russo's first argument is that U.S. Healthcare has effectively denied him meaningful access to its grievance procedures. Russo, through his counsel, requested a copy of U.S. Healthcare's "benefits booklet" on September 2, 1993, as well as "copies of all documents concerning the enrollment of Eric Fountain with U.S. Healthcare and the payment or denial of any of his medical bills." Amended Complaint, exhibit F. U.S. Healthcare did not respond by providing Russo with a copy of the relevant booklet, which would presumably have discussed its grievance procedure; instead, it replied with a letter, dated November 11, 1993, stating, in relevant part: "It is U.S. Healthcare's position that Eric Fountain was never enrolled in

---

**5.** A possibility not raised by the parties is that certain of Russo's claims may be excused from the exhaustion requirement as they are not claims for benefits under an employee benefit plan but instead claims of a breach of fiduciary duty, under § 1132(a)(2), or of a breach of another of ERISA's statutory obligations, under § 1132(a)(3). The Third Circuit has found that the exhaustion requirement only applies to claims for denial of benefits. *See Zipf v. American Tel. and Tel. Co.,* 799 F.2d 889, 891 (3rd Cir.1986).

U.S. Healthcare.... Since Mr. Fountain's attempted enrollment was after he was already admitted to the hospital, he did not meet the eligibility requirements for U.S. Healthcare.... Any additional information U.S. Healthcare has is protected by the attorney/client privilege." Amended Complaint, exhibit D.

Russo then responded, in December 1993, by commencing an action in state court (the action that, after removal, became the present case). Russo did eventually receive a copy of U.S. Healthcare's policy, although somewhat indirectly: in February 1994, Abington Memorial Hospital included it as an exhibit to a pleading in the present action. See Memorandum of Law of Abington Memorial Hospital in Opposition to Plaintiff's Motion for Remand. As a result, Russo did not have any information on the requirements of U.S. Healthcare's grievance procedures until some five months after Russo's initial request for a copy of U.S. Healthcare's benefits booklet. A nine-month delay in providing documents that would be essential to bringing an administrative claim has been held effectively to deny a beneficiary meaningful access to administrative review procedures, and hence to excuse compliance with the exhaustion requirement. See Curry v. Contract Fabricators Incorporated Profit Sharing Plan, 891 F.2d 842, 846–47 (11th Cir.1990). There is little difference, for our purposes, between a delay of five months and a delay of nine; a beneficiary who has waited a reasonable period for requested plan information without receiving it is likely to conclude that this information will not be forthcoming, and five months is unquestionably a reasonable amount of time to wait.

U.S. Healthcare asserts that a plaintiff's failure to exhaust administrative remedies is not excused by his ignorance of those remedies. In support of this claim, U.S. Healthcare cites a case in which the court found that an insurer's failure to notify a claimant of his appeal rights in a letter denying benefits, despite being obliged by regulation to do so, did not excuse a plaintiff's failure to exhaust his administrative remedies. See Tomczyscyn v. Teamsters, Local 115 Health & Welfare, 590 F.Supp. 211, 215 (E.D.Pa.

1984). The case at bar, however, involves an insurer who failed to comply with a direct request for information, rather than one who failed to obey a diffuse duty to furnish it. A beneficiary whose direct request for information has been disregarded is especially likely to conclude that no administrative remedies are available or that those remedies would be unavailing. Moreover, the fact that Russo's letter sought information on the "payment or denial" of Fountain's benefits, and that it was from an attorney, should have put U.S. Healthcare on notice that this request for information was a strong candidate for its grievance procedure, rendering U.S. Healthcare's failure to provide information on that procedure particularly unfortunate. Thus, the court concludes that Russo was indeed denied meaningful access to U.S. Healthcare's grievance procedure, and so should not be required to exhaust that procedure.

### III

The remaining element of U.S. Healthcare's motion to dismiss revolves around ERISA's definition of an "administrator." U.S. Healthcare argues that section 1132(c)(1) only renders liable any "administrator" who "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary," and that, because it is not an "administrator" as that term is defined in ERISA, it cannot be held liable under that section.

ERISA defines an "administrator" to be:

(i) that person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). U.S. Healthcare argues that Russo has not alleged that the Abington Healthcare Plan designated any person as the "administrator," and that U.S. Healthcare's own "Group Master Contract,"

the contract governing the relationship between U.S. Healthcare and Abington Healthcare Plan, did not designate such a person. Therefore, U.S. Healthcare argues, the "administrator" is the "plan sponsor," that is, Abington Memorial Hospital. In response, Russo asserts that it is not clear who is designated as the "administrator" in the instrument under which Abington Healthcare Plan is operated, so that there remains an issue of fact as to whether U.S. Healthcare is an "administrator".

Russo is correct. Just as the precise nature of Abington Healthcare Plan's appeals process is unclear, it is not clear at present who, if anyone, is designated as an administrator in the instrument under which the Plan operates. Russo's amended complaint asserts that U.S. Healthcare is an "administrator" of the Abington Healthcare Plan. Amended Complaint, ¶ 30.[6] At a future stage of the litigation, Russo will have an obligation to come forward with facts to support this assertion. At present, however, Russo has alleged that U.S. Healthcare is an "administrator," and that is enough to preclude the dismissal of this count of the complaint.

## IV

The court will now turn to Abington Healthcare Plan's motion to dismiss Russo's claims against it. One aspect of this motion asserts that, if Russo's claim of denial of benefits against U.S. Healthcare is dismissed, then Russo's similar claim against the Plan should also be dismissed. Because this court has denied U.S. Healthcare's motion to dismiss, this element of the Plan's motion is moot.

 Abington Healthcare Plan's motion to dismiss also argues that Russo's claim against it under section 1132(c)(1) for failure to provide Russo with plan information should be dismissed as a "transparent attempt ... to convert his discovery request under Rule 34 of the Federal Rules of Civil Procedure into an independent cause of action." Defendant Abington Healthcare Plan's Motion to Dismiss at 3–4. This argument is entirely without merit. Penalties under section 1132(c)(1) and discovery sanctions serve markedly different purposes, and very different facts are relevant to establishing the appropriateness of each. Discovery sanctions are intended to deter misconduct during discovery; a court deciding whether to impose such sanctions will consider the conduct of the parties during the discovery process. Sanctions under section 1132(c)(1), by contrast, are intended to ensure that beneficiaries or participants in employee benefit plans can obtain the information necessary to vindicate their rights under those plans, and a court deciding whether to impose them will consider evidence about efforts made by (1) a participant or beneficiary to receive plan information, and (2) a plan to respond to requests for information.

▪ In this case, Russo's efforts to obtain plan information began well before the present litigation. Russo requested plan information from Abington Memorial Hospital in letters sent in September and October 1993. The information apparently was not forthcoming; indeed, Russo asserts that he received no information concerning the Plan until the Plan belatedly complied with a discovery request on May 22, 1995, over eighteen months later. In light of these allegations, it would not be appropriate for this court to grant Abington Healthcare Plan's motion to dismiss Russo's 1132(c)(1) claim.

## V

In summary, the defendants' motions to dismiss will be denied.

■

---

6.  Russo's allegation is actually that "[a]s a result of the acceptance of premium payments from the PLAN and the contractual relationship therewith, USH [U.S. Healthcare] became an administrator of the PLAN and benefits provided thereunder."

In fact, U.S. Healthcare could have become an administrator of the Plan only by being named as one in the instrument under which the Plan is operated. Russo's statement, however, suffices to make such an allegation.