**Marijean MAJKA, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA and Prudential Disability Management Services, Defendants.**

**Civil Action No. 01–1886 (JEI).**

United States District Court,
D. New Jersey.

Nov. 27, 2001.

Kenney & Kearney, LLP, by Jane A. Kenney, Cherry Hill, NJ, for Plaintiffs.

Cuyler Burk, LLP, by Jo Ann Burk, Parsippany, NJ, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

IRENAS, District Judge.

This matter having appeared before the Court upon Defendants' Motion for Summary Judgment, the Court having reviewed the submissions of the parties, and it appearing that:

1. Plaintiff Marijean Majka was employed by the William Wrigley, Jr. Company ("Wrigley") as a sales representative when, in January 2000, she left her employment due to physical disability;

2. At all times relevant to this litigation, Wrigley employees, including Plaintiff, were covered by the Wrigley Disability Income Benefit Plan ("the Plan"), an employee benefit plan offered by Defendant Prudential Insurance Company of America, Inc. ("Prudential") and administered by Defendant Prudential Disability Management Services ("Prudential Services"), a Prudential subsidiary;

3. Pursuant to the terms of the Plan, Plaintiff was paid short-term disability benefits for a one-year period beginning after the onset of her condition in January 2000. Plaintiff also submitted a claim to Prudential for long-term disability benefits. (Compl. at ¶ 14). This request was denied in January 2001. (Id.). The stated reason for this denial was that Plaintiff had been "released to return to work" before becoming qualified for long-term benefits. (See Cert. of Andrew K. Craig, Ex. D);

4. In connection with the denial of her request, Plaintiff was sent a letter, dated January 8, 2001, explaining the basis for Defendants' denial of her claim. (See Craig Cert., Ex. D). The letter informed Plaintiff that she was entitled, by the terms of the Plan, to appeal the initial denial of benefits. The letter then stated that any such appeal would need to be in writing and could be accompanied by "comments or additional evidence [Plaintiff] wish[ed] considered as well as any pertinent documents." The letter concluded by providing an address to which Plaintiff's appeal should be sent. (Certification of Andrew Craig, Ex. D);

5. One piece of information not contained in the letter was the time limit, if any, applicable to Plaintiff's appeal. In order to clarify this issue and others, Plaintiff contacted Prudential by telephone on a number of occasions. (See Prudential's Telephone Call Logs, attached as Ex. A to the Cert. of Jane A. Kenney). On January 29, 2001, Plaintiff spoke with Helen Lopez, a Prudential Services employee who told Plaintiff that she was entitled to appeal the decision against her and a that "a letter will be sent out." (Id.). According to Plaintiff, she understood Ms. Lopez's statements as indicating that Plaintiff

would be receiving another letter, in addition to the one sent on January 8, 2001, describing her appeal rights. (*See* Pl. Stmt. of Mat. Facts, ¶ 14). No additional letter was received. On February 15, 2001, Plaintiff's attorney sent a letter to Tammy Pisano, a Prudential Services Disability Claim Manager, requesting information about the time limits applicable to Plaintiff's appeal. On February 21, 2001, Plaintiff again called Prudential Services to inquire about the issue of time limits and to request any necessary "appeal forms." According to the phone records and Statement of Material Facts submitted by Plaintiff, Tammy Pisano responded to this inquiry by leaving a message, on Plaintiff's answering machine, indicating that there was no time limit for Plaintiff's appeal and that Plaintiff would need to send a written letter of appeal. (*See* id. at ¶ 12);

6. Plaintiff did not file an appeal, however. Instead, on April 23, 2001, Plaintiff filed the instant lawsuit pursuant to § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), (g)(1), claiming that Defendants impermissibly refused to provide her with long-term disability benefits to which she was entitled under the Plan. In addition, Plaintiff asserted state common law claims for breach of contract (Count II) and breach of the implied covenant of good faith and fair dealing (Count III);

7. On October 23, 2001, Defendants filed the instant Motion for Summary Judgment, arguing that Plaintiff's state law claims are preempted by ERISA and should therefore be dismissed and that Plaintiff's ERISA claim should be dismissed because Plaintiff failed to exhaust the administrative remedies available to her under the Plan;

8. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to in-terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c));

■ 9. There is no question that ERISA preempts Plaintiff's state law claims for breach of contract and breach of the implied duty of good faith and fair dealing. The parties agree that the Plan is an "employee benefit plan" covered by ERISA. (*See* Def. Stmt. Mat. Facts, ¶ 7, Pl. Response to Def.'s Stmt. Mat. Facts, ¶ 7). Section 514(a) of ERISA provides that the Act shall, with certain limited exceptions, "supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. 1144(a). The Supreme Court has given the phrase "relates to" its "broadest common-sense meaning," holding that a state law relates to an employee benefit plan if it "has a connection with or reference to such a plan." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). In particular, the Court has determined that ERISA's preemption clause is "not limited to state laws specifically designed to affect employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting *Shaw v. Delta Air Lines,* 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983));

10. As the Third Circuit recently noted, "suits against ... insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a)." *Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 278 (3d Cir.2001) (citation omitted).

Indeed, the issue was squarely addressed in *Pilot Life*, in which the Supreme Court held that a plaintiff's common law claims for "tortious breach of contract" and "bad faith" "undoubtedly meet the criteria for pre-emption under § 514(a)". 481 U.S. at 48, 107 S.Ct. 1549. The basis for such holdings is that "the decision whether a requested benefit or service is covered by the ERISA plan falls within the scope of the administrative responsibilities of the ... insurance company and therefore 're-lates to' the employee benefit plan." *Pryzbowski*, 245 F.3d at 278;[1]

11. Plaintiff claims that she was entitled to long-term disability benefits under the terms of the Plan and that Prudential's failure to provide those benefits constituted breach of contract and of the duty of good faith and fair dealing. Under the rationale discussed above, such claims undoubtedly "relate to" Plaintiff's ERISA plan and are therefore preempted. Indeed, Plaintiff appears to concede this point as she does not address the issue at all in her opposition to Defendants' Motion for Summary Judgment. Accordingly, Plaintiff's state law claims will be dismissed with prejudice;

12. Section 503(2) of ERISA, now 29 U.S.C. § 1133, provides that "every employee benefit plan shall afford a reasonable opportunity to any participant whose claim has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." This provision has been universally interpreted as requiring an individual claiming improper denial of benefits first to exhaust the internal administrative procedures made available by the ERISA plan at issue before seeking judicial relief. *See, e.g., Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir.1990); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir.1990); *Wolf v. National Shopmen Pension Fund*, 728 F.2d 182, 185 (3d Cir.1984); *Amato v. Bernard*, 618 F.2d 559, 566–69 (9th Cir. 1980). However, it has been recognized that exhaustion may be excused "if the claimant is threatened with irreparable harm, if resort to administrative remedies would be futile, or if the claimant has been denied meaningful access to the plan's administrative procedures." *Grumbine v. Teamsters Pension Trust Fund of Philadelphia & Vicinity*, 638 F.Supp. 1284, 1286 (E.D.Pa.1986) (citation omitted). Plaintiff does not press her claim under either of the first two theories and there is no evidence that either theory can reasonably be applied to this case.[2] At issue, therefore,

---

1. Although 29 U.S.C. § 1144(b)(2)(A) does provide that "any law of any State which regulates insurance, banking or securities" will not be preempted by ERISA, Plaintiff does not argue that this exception applies and would not prevail even if she were to do so. *See Pilot Life*, 481 U.S. at 48–57, 107 S.Ct. 1549 (concluding that plaintiff's common law claims were not covered by the "saving clause" of § 1144).

2. Plaintiff does contend, in a one-sentence footnote, that the futility exception applies to her case "for the same reasons" discussed in reference to her denial of meaningful access claim. However, a brief examination of the cases dealing with the futility exception reveal that Plaintiff's contention is without merit. The futility exception is designed to permit a claimant to proceed directly to the federal courts when the conduct of a defendant makes it clear that the continued denial of claimant's claims is a foregone conclusion. *Compare Berger*, 911 F.2d at 917 (excusing failure to exhaust because evidence demonstrated that defendant had adopted a policy of denying claims such as those brought by plaintiffs) *with Metz v. United Counties Bancorp*, 61 F.Supp.2d 364, 384 (D.N.J.1999) (refusing to apply futility exception even where plaintiffs had received correspondence from defendants indicating that Plan had conclusively determined that plaintiffs were not entitled to benefits). Accordingly, a plaintiff seeking to excuse her failure to exhaust must make a "clear and positive showing of futili-

is whether the actions of Defendants in failing to respond in writing to Plaintiff's inquiries regarding the time limit for her appeal and to provide Plaintiff with "appeal forms" can be said to have denied Plaintiff "meaningful access" to the Plan's administrative procedures;

■ 13. A denial of meaningful access occurs when "one party has the sole power to invoke the higher levels of the review procedure and has not allowed another party access [and] ... the other party [has] made attempts to have the higher levels of review initiated." *Lucas v. Warner & Swasey Co.*, 475 F.Supp. 1071, 1074 (E.D.Pa.1979); *see also, Murren v. American National Can Co.*, 2000 WL 116067, at *4 (E.D.Pa. Jan.27, 2000) (quoting *Lucas*); *Carter v. Signode Indus., Inc.*, 688 F.Supp. 1283, 1288 (N.D.Ill.1988). In this case, Plaintiff has not been denied access to any of the Plan's appeals procedures, nor has she attempted, in any substantial way, to initiate that process. It is true that there appears to have been some miscommunication about the time for appeal and whether any specific "appeal forms" were required. However, Plaintiff was aware of her appeal rights by virtue of the initial denial of benefits letter and her subsequent communications with Defendants, and Defendants did not, contrary to Plaintiff's contentions, take any actions which could have reasonably led Plaintiff to believe that the avenue to her appeal was effectively blocked;

14. Plaintiff relies primarily on *Russo v. Abington Memorial Hosp. Healthcare Plan*, 907 F.Supp. 857 (E.D.Pa.1995) to bolster her claim of denial of meaningful access. However, *Russo* is inapposite. In *Russo*, the administrator of an employee's estate sued to recover the costs of the decedent's hospital bills. In denying the defendants' motion to dismiss for failure to

exhaust, the court noted that the plaintiff had formally requested a copy of the plan documents at issue and that this request was expressly denied, thereby preventing the plaintiff from obtaining any information whatsoever about the available administrative procedures. *Russo*, 907 F.Supp. at 861–62. In reaching its decision, the court stated that "a beneficiary whose direct request for information has been disregarded is especially likely to conclude that no administrative remedies are available or that those remedies would be unavailing." *Id.* It is this language upon which Plaintiff relies;

15. While the instant case, like *Russo*, involves a direct request for information, that is where the similarity ends. Here, there is no evidence that Defendants ever "disregarded" any of Plaintiff's requests or took any other steps to impede Plaintiff's appeal. In fact, Defendants provided, albeit informally, the very information about the time for filing an appeal that was the primary focus of the inquiries of Plaintiff and her attorney. While there evidently was some miscommunication between Plaintiff and the Defendants, Plaintiff nevertheless possessed sufficient information to appeal the decision against her. She knew of her right to appeal the decision, that the appeal needed to be in writing, and that the Plan would consider the "issues ... comments and additional evidence [Plaintiff] wish[ed] considered." Further, Plaintiff knew to whom to direct the appeal. This information was sufficient to permit her to make the required "attempts to have the higher levels of review initiated." *Lucas, supra*, at 1074. Accordingly, Plaintiff was not entitled, simply because she was expecting a second explanatory letter that never arrived, to

---

ty." *Harrow v. Prudential Ins. Co.*, 76 F.Supp.2d 558, 562 (D.N.J.1999). Plaintiff

has not attempted to make such a showing and, in any case, could not do so.

file suit without taking further steps to clarify her concerns;

16. Plaintiff contends that even if she was not affirmatively denied meaningful access to the Plan's appeals procedure, the failure of Defendants' denial of benefits letter to comply with the requirements of 29 U.S.C. § 1133 and its accompanying regulations, specifically 29 C.F.R. § 2560–502–1(g), should lead this Court to the conclusion that Plaintiff "exhausted Prudential's administrative framework to the fullest extent possible" and should excuse her failure to appeal. (Pl. Br. at 15). Initially, it should be noted that the letter informing Plaintiff of the denial of her claim appears to satisfy the requirements of § 1133. Even if it did not, such inadequacy would not excuse Plaintiff's failure to pursue her appeal as "procedural violations of ERISA § 503 [29 U.S.C. § 1133] require a procedural remedy, such as remanding the claim to the administrator for a 'full and fair review.'" *Russell v. The Paul Revere Life Ins. Co.*, 148 F.Supp.2d 392, 410 (D.Del.2001) (citing *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir.2000)). Accordingly, even if Defendants' notice of denial was deficient, Plaintiff would not be permitted to bypass the administrative processes available to her and proceed directly to this Court. *See Grumbine*, 638 F.Supp. at 1287 ("Even if [the defendant] did provide the [plaintiffs] with inadequate information, plaintiff would still be required to follow the [defendant's] appeal procedures."); *Tomczyscyn v. Teamsters Local 115 Health & Welfare Fund*, 590 F.Supp. 211, 215 (E.D.Pa.1984) (Failure to notify plaintiff of right to appeal did not excuse failure to exhaust because "the policies supporting the exhaustion requirement apply equally to plaintiffs' claim even though a procedural irregularity within the Fund may have contributed to their premature attempt to secure judicial relief.").

17. In conclusion, Plaintiff was not denied meaningful access to the appeals procedures available under Wrigley's disability benefits plan. Plaintiff had been informed of her right to appeal the initial denial of benefits and possessed sufficient information to initiate that appeal. Accordingly, neither her miscommunications with the Defendants nor the alleged deficiencies in Defendants' denial of benefits letter excuse Plaintiff's failure to exhaust the appeals process available to her under the Plan. Moreover, since the Court will dismiss Plaintiff's ERISA claims without prejudice and since Defendants have made it clear that there are no time limits applicable to Plaintiff's appeal, the finding that Plaintiff has not exhausted the administrative remedies available to her will not compromise her ability to seek a "full and fair review" of the denial of her claim for benefits.

And for good cause shown,

**ORDERED THAT:**

1) Defendant's Motion for Summary Judgment is hereby **GRANTED** as to Plaintiff's ERISA claims, contained in Count One of Plaintiff's Complaint, and those claims are hereby **DISMISSED WITHOUT PREJUDICE.**

2) Defendant's Motion for Summary Judgment is hereby **GRANTED** as to Plaintiff's claims for breach of contract and breach of the implied duty of good faith and fair dealing, contained in Counts Two and Three of Plaintiff's Complaint, and those claims are hereby **DISMISSED WITH PREJUDICE.**