Petralia v. AT&T Global          CV-94-533-M   07/29/96
                    UNITED STATES DISTRICT COURT FOR THE
                           DISTRICT OF NEW HAMPSHIRE


Rosemary Petralia,
      Plaintiff

      v.                                      Civil No. 94-533-M

AT&T Global Information Solutions
Company; and The Employee and Group
Benefit Plan for Account Managers
and Sales Representatives for the
Systemedia Division,
      Defendants


                              O R D E R


      Plaintiff, Rosemary Petralia, brings this action against

AT&T Global Information Solutions Company ("AT&T") and The

Employee and Group Benefit Plan for Account Managers and Sales

Representatives of the Systemedia Division (the "plan"), seeking

both short term and long term disability benefits.  She says that

after obtaining short term disability benefits the defendants

improperly terminated those benefits, discharged her in

retaliation for having applied for them, and then wrongfully

blocked her ability to obtain long term disability benefits.

Defendants deny any wrongdoing and move for summary judgment.

On June 19, 1996, the court held a hearing on defendants' motion for summary judgment. The parties presented evidence and legal argument in support of their respective positions. For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part. Specifically, defendants are entitled to judgment as a matter of law with regard to Ms. Petralia's claims for long term disability benefits and her claim that defendants discharged her in retaliation for having sought benefits under the plan. However, as to her claim relating to improper termination of her short term disability benefits, Ms. Petralia is entitled to judgment as a matter of law, defendants having conceded (and the court finding) that those benefits were not terminated in accordance with plan or ERISA requirements.

## Standard of Review

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact "is one `that might affect the outcome of the suit under the governing law.'" <u>United States v. One Parcel of Real Property</u>

2

with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson, 477 U.S. at 256. The party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). That burden is discharged only if the cited disagreement relates to a genuine issue of material fact. Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993).

## Facts

The parties agree that the plan is an employee welfare benefit plan, governed by the provisions of the Employee Retirement and Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). The plan's administrator is the Retirement Committee of AT&T, which has delegated various administrative responsibilities to local plan administrators and, in certain circumstances, to the insurance companies which underwrite the

3

benefits provided by the plan. AT&T funds the short term disability benefits under the plan, while The Prudential Insurance Company, through an insurance policy (or policies) issued by it, funds the plan's long term disability obligations.

Ms. Petralia was employed by AT&T from February 11, 1991, until June 29, 1993, when her position was eliminated and her employment terminated. Approximately 10 months prior to her termination, in September, 1992, she became ill and applied for short term disability benefits under the plan. The plan approved her application and awarded short term benefits, initially for the period from September 4 through 11, 1992. Subsequently, the plan approved short term disability benefits for various periods extending continuously through June 29, 1993, when the plan determined that she was no longer disabled and, therefore, able to return to work.

In September, 1992, Ms. Petralia began seeing Dr. Paul Lagarenne, who determined that she was suffering from mononucleosis. However, when Dr. Lagarenne decided she was ready to return to work, Ms. Petralia felt that he was no longer taking her complaints seriously and sought treatment from Dr. David Itkin, a specialist in infectious diseases. Dr. Itkin first

4

examined Ms. Petralia on October 30, 1992, and found no evidence of any disease other than mononucleosis. Although he concurred with Dr. Lagarenne's diagnosis, he was not prepared to return Ms. Petralia to work. Therefore, the plan continued to provide Ms. Petralia with short term disability benefits.

In March of 1993, after providing approximately 6 months of short term benefits, defendants requested that Ms. Petralia submit to an independent medical examination ("IME") by another physician. Dr. Judith Currier performed that examination. Dr. Currier also did not dispute Dr. Itkin's diagnosis of mononucleosis, but she concluded that Ms. Petralia could return to work by May 1, 1993. When Ms. Petralia failed to return to work on May 1, 1993, AT&T requested yet another IME. In accordance with AT&T's policy, Ms. Petralia was referred to a new physician, Dr. Spiro Mitsopoulos, who found no objective evidence of any active or ongoing disease. He did, however, acknowledge that it was possible that Ms. Petralia was suffering from an allergic syndrome or chronic fatigue. Like Dr. Currier, he concluded that Ms. Petralia should be able to return to work,

5

initially on a part-time basis and then, after about one week, in a full-time capacity.[1]

After receiving Dr. Mitsopoulos's report, a representative of AT&T called Ms. Petralia on May 28, 1993, to inform her that Dr. Mitsopoulos concluded that she was no longer disabled and, therefore, was capable of returning to work. By letter of the same date, AT&T notified Ms. Petralia that although she had been released to return to work effective June 1, 1993, her position had been eliminated due to downsizing of AT&T's workforce.[2] Effective June 29, 1993, AT&T terminated Ms. Petralia and discontinued her short term disability benefits (10 weeks before they would have ended, at the end of one year). Because the forms necessary to apply for long term disability benefits are

_____

[1] Subsequently, on May 24, 1993, Dr. Itkin diagnosed Ms. Petralia's condition as chronic fatigue syndrome. That diagnosis was not, however, communicated to AT&T or the plan until a later date. So, the only medical evidence before the plan indicated that Ms. Petralia suffered from mononucleosis. And, the physicians who had performed the most recent IMEs concluded that she was capable of returning to work.

[2] AT&T explains that it decided to eliminate Ms. Petralia's position in the fall of 1992 as part of a company-wide reduction in force. However, pursuant to its policy, Ms. Petralia continued to receive disability benefits and she was not terminated or notified of her impending termination due to job elimination until she was deemed physically fit to return to work.

only provided by the plan to those employees who are about to exhaust short term benefits (exhaustion of short term benefits being a prerequisite for long term benefit eligibility), Ms. Petralia was never provided with such forms. Accordingly, she never applied to the plan (or Prudential) for long term disability benefits for want of the appropriate claim forms, and the plan never considered her eligibility for long term benefits.

AT&T concedes that its May 28th letter terminating Ms. Petralia's short term benefits did not reference the applicable provisions of the plan under which her short term benefits were being terminated, nor did it inform her of her right to appeal that decision or to present additional information to support her continued eligibility for short term benefits. It claims, however, that she had actual notice of all such rights and, therefore, suffered no actual harm from the letter's "technical" deficiencies.

## Discussion

I.  <u>Short Term Disability Benefits</u>.

Despite her belief at the time (and her consistent representations to the plan) that she suffered from mononucleosis, Ms. Petralia now asserts that she actually suffered and continues to suffer from chronic fatigue syndrome, based on Dr. Itkin's diagnosis after her short term disability benefits were withdrawn. She says that condition constitutes an "accidental bodily injury or sickness which wholly and continuously prevents [her] from performing any and every duty pertaining to [her] occupations," within the meaning of the plan's terms (Part III, Section 1.B), so, she claims entitlement to the remaining short term disability benefits (roughly ten weeks). The plan responds that it was never presented with timely medical information supportive of her disability claim based on chronic fatigue syndrome, and in fact was not informed of that diagnosis until after the start of this litigation. It argues that based upon the medical evidence properly before it at the time (i.e., a diagnosis of mononucleosis and two independent physicians' reports pronouncing her fit to return to work), its decision to terminate Ms. Petralia's short term benefits cannot be described as arbitrary or capricious, and must be sustained.

One thing is readily apparent. Even if Ms. Petralia did fail to present evidence of her current claims regarding chronic fatigue syndrome in a timely fashion, the plan still improperly terminated her short term benefits when, by its own admission, it failed to apprise her of her right to appeal that decision, and otherwise neglected to comply with regulatory requirements by failing to inform her of what additional information she could provide to avoid termination. See, 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(f). Accordingly, plaintiff's short term benefits were improperly terminated.

The appropriate remedy is to remand the issue of her continued eligibility for short term benefits to the plan fiduciary, who shall afford Ms. Petralia a full opportunity under the plan's terms to establish her continued eligibility for short term benefits, as of the time of improper termination, which of course will require an assessment of whatever evidence she might present to establish her continued eligibility. The court is satisfied that remand is not a futile exercise nor a useless formality, since the plan has not been presented with nor has it considered evidence of possible chronic fatigue syndrome. Moreover, if the plan had provided plaintiff with a proper termination notice, including notice as to what additional

9

information should be provided to establish her continued eligibility for benefits, she undoubtedly would have submitted, and the fiduciary would have considered, Dr. Itkin's diagnosis of chronic fatigue syndrome, along with any countervailing medical opinion or evidence. <u>White v. Jacobs Engineering Group</u>, 896 F.2d 344, 352 (9th Cir. 1989); <u>Wolfe v. J.C. Penny Co., Inc.</u>, 710 F.2d 388, 393 (7th Cir. 1983). <u>See</u> 29 C.R.F. §§ 2560.503-1(e)(2) and (g).

II. <u>Long Term Disability Benefits</u>.

As noted above, the plan's long term disability benefits are funded through an insurance policy issued by Prudential. However, Ms. Petralia never applied to the plan (or Prudential) for long term disability benefits. Nevertheless, Ms. Petralia asks the court to compel the defendants (Prudential is not a defendant) to provide her with long term benefits because: (a) she suffers from chronic fatigue syndrome and, therefore, qualifies for such benefits under the plan; and (b) defendants failed to provide her with the forms necessary to apply for long term benefits and, therefore, should be required to pay those benefits on that ground alone. The court disagrees.

10

As noted previously, medical evidence of Ms. Petralia's chronic fatigue syndrome was not presented to the plan or Prudential. While she may well suffer from the disease, she also may not suffer from it — that issue has not been decided on the merits by anyone. The plan (or Prudential) cannot fairly be said to have abused its discretion or to have acted in an arbitrary and capricious manner by failing to provide plaintiff with long term disability benefits which were not applied for, based upon medical evidence that was not provided or considered, simply because the plan (even erroneously) did not supply the requisite forms. Essentially, plaintiff asks the court to determine, in the first instance, that she actually suffers from chronic fatigue syndrome, that as a result she is permanently and totally disabled under the terms of the plan, and that she is entitled to long term benefits.

However, the initial determination of plaintiff's eligibility for long term disability benefits (or any benefits for that matter) is committed to the plan fiduciaries. See e.g., Challenger v. Local Union No. 1, 619 F.2d 645, 649 (7th Cir. 1980). This court is not an appropriate forum in which to raise, for the first time, benefit eligibility claims under ERISA

11

governed plans. Similarly, this is not the appropriate forum in which to present medical evidence which was not brought to the attention of the plan, to support a claim that was not presented to the plan. This court's role is to review benefit eligibility determinations made by plan fiduciaries; it does not normally make those determinations in the first instance. See Perry v. Simplicity Engineering, 900 F.2d 963, 966 (6th Cir. 1990) ("In the ERISA context, the role of the reviewing federal court is to determine whether the administrator or fiduciary made a correct decision . . . Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators . . ..");  Taft v. Equitable Life Assur. Soc., 9 F.3d 1469, 1472 (9th Cir. 1993) ("Permitting a district court to examine evidence outside the administrative record would open the door to the anomalous conclusion that a plan administrator abused its discretion by failing to consider evidence not before it.").

Because Ms. Petralia did not submit a long term disability benefits claim under the plan's terms, and plan fiduciaries neither considered nor ruled on the merits of such a claim, there is no ERISA governed eligibility decision for the court to

12

review. If she believes that she qualifies (or qualified in the past) for long term disability benefits under the plan, plaintiff must first apply for those benefits and provide appropriate medical evidence to support her application. It is far too great a stretch to posit eligibility for long term disability benefits on the plan's failure to provide necessary application forms when the forms were routinely not provided due to an ineligibility decision with respect to short term benefits (a prerequisite to long term eligibility), even if that ineligibility decision was procedurally flawed. If, on remand and after full consideration, her application for full short term benefits is denied, or if it is granted, but long term benefits are denied, then the court will be in a position to carry out its statutory function under ERISA. At this point, however, the court's involvement in Ms. Petralia's claim for long term benefits is simply premature.

III. <u>Interference with Rights under ERISA</u>.

Finally, plaintiff asserts that her termination from employment was motivated by defendants' desire to interfere with her protected rights under the plan (count IV), and that AT&T's decision to terminate her was in retaliation for her efforts to obtain benefits under the plan (Count V). Defendants have,

13

however, presented evidence in support of their summary judgment motion which tends to establish facts showing that Ms. Petralia's discharge was actually the result of downsizing AT&T's workforce. In response, plaintiff has remained silent. Her objection to defendants' motion for summary judgment fails to even address the issue and, at the June 19th hearing, she failed to point to a single item of evidence or any disputed material fact that might undermine defendants' claim that her termination was solely due to company downsizing and entirely unrelated to her benefit claims. In short, she has failed to demonstrate the existence of any genuine dispute as to any material fact on that issue for trial.

Accordingly, the court holds that, based on the undisputed facts, defendants are entitled to judgment as a matter of law with regard to Counts IV and V. See Barbour v. Dynamics Research Corp., 63 F.3d 32, 39 (1st Cir. 1995) ("Once the employer has met its burden of production, . . . the burden of production shifts back to the plaintiff, who must prove that the defendant acted with the specific intent of interfering with the plaintiff's benefits.), cert. denied, 116 S.Ct. 914 (1996).

14

## Conclusion

Judgment shall be entered on Count I of the complaint (and that portion of Count III relating to short term benefits) in favor of plaintiff and remanding the matter to the plan fiduciary, who shall:

1.  Redetermine plaintiff's eligibility for short term disability benefits as of the date of improper termination;

2.  Provide her with proper notice of its eligibility determination consistent with the terms of the plan, ERISA, and governing regulations; and

3.  Provide her with the appropriate forms and information necessary to file an application for long term disability benefits, should she be found eligible for full short term disability benefits (a prerequisite for long term eligibility);

This order will be reconsidered if within 21 days from the date of this order defendants present some evidence or cogent argument establishing that there remains a genuine dispute as to some material fact precluding summary judgment in favor of plaintiff on that issue (improper termination of short term benefits). See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) ("District courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.");

15

Stella v. Town of Tewksbury, 4 F.3d 53, 55-56 (1st Cir. 1993) (permitting district courts to enter summary judgment sua sponte when discovery is sufficiently advanced and when the target party is on notice to bring forward all of its evidence on the essential elements of the critical claim or defense).

For the foregoing reasons, defendants' motion for summary judgment (document no. 28) is granted in part and denied in part. Defendants are entitled to judgment as a matter of law on Counts II through V of plaintiff's complaint. With regard to Count I (and that portion of Count III relating to short term benefits), the facts of record make it plain that the plan's termination of short term benefits was procedurally defective and, therefore, the matter should be and is hereby remanded to the fiduciary for a new eligibility determination.

Defendants' motion to compel psychological examination of Ms. Petralia (document no. 19) is denied as moot. Ms. Petralia's psychological condition relates exclusively to her claim of disability based on a diagnosis of chronic fatigue syndrome which, as noted above, is not a matter properly before the court since that factual matter was never presented to or considered by

16

the plan fiduciary relative to benefit eligibility.  Finally,

defendants' motion to strike (document no. 32) is also denied as

moot.


        SO ORDERED.


                                        _____
                                        Steven J. McAuliffe
                                        United States District Judge

July 29, 1996

cc:   James W. Donchess, Esq.
      Maureen K. Bogue, Esq.
      John A. Houlihan, Esq.
      Lori J. Collins, Esq.