Margaret AYERS, Plaintiff,

v.

**THE MAPLE PRESS COMPANY and AFFILIATED COMPANIES, Defendant.**

No. CIV. A. 1:00–CV–480.

United States District Court, M.D. Pennsylvania.

Oct. 16, 2001.

John D. Briggs, Katherman Martz & Gailey, York, PA, for plaintiffs.

Abigail L. Flitter, Brian D. Pedrow, Ballard, Spahr, Andrews & Ingersoll, LLP, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

KANE, District Judge.

Before the Court are the parties' cross motions for summary judgment. The motions have been fully briefed and are ripe for disposition. For the reasons stated below, Defendant's motion for summary judgment is denied and Plaintiff's motion for summary judgment is granted.

### I. Background

Plaintiff Margaret Ayers ("Plaintiff") was an employee of Defendant Maple Press Company and Affiliated Companies ("Defendant") and covered under Defendant's Employee Benefit Plan ("the Plan") when, on December 13, 1997, her truck left the roadway and struck a tree. Plaintiff sustained serious injuries, was in a coma for six weeks and incapacitated for a further period of time thereafter. She is now a quadriplegic and unable to work. Her mother, Jeanne M. Spiker ("Spiker") ob-

tained power of attorney and commenced these proceedings.

Tests performed on Plaintiff at the hospital after the crash showed a blood alcohol level of 0.144 and a police report showed a blood alcohol content of 0.13, both of which exceed the level defining "under the influence" in Pennsylvania law.[1] The parties dispute whether Plaintiff was under the influence at the time her injuries were incurred. While the blood test evidence indicate that she was, Plaintiff questions the method and accuracy of testing, the timing of testing after the injuries, and extrapolation of those test results back in time to determine her blood alcohol level at the time the injuries were incurred.[2]

On Plaintiff's behalf, Spiker sought coverage under the Plan for medical and short term disability benefits. Defendant replied with three documents: an Explanation of Benefits dated June 15, 1998 ("EOB"); a letter dated June 17, 1998, addressed to Plaintiff ("Letter 1"); and a letter dated June 17, 1998, addressed to Spiker ("Letter 2"). Spiker received all three documents on June 18, 1998. The EOB advised Plaintiff of her right to request a review of the decision to deny benefits ("appeal") within 120 days after receiving the EOB. EOB at ¶ D. Defendant received Plaintiff's appeal, which was dated October 14, 1998 but postmarked October 27, 1998, on October 28, 1998. The parties dispute whether Plaintiff's appeal was untimely, and Defendants have asserted untimeliness of the appeal as an affirmative defense to this action.[3]

Defendants acknowledged receipt of Plaintiff's appeal in a December 22, 1998 letter and denied the appeal in a February 24, 1999 letter ("Letter 3"). Plaintiff filed this action in the Court of Common Pleas of York County, Pennsylvania, on February 22, 1999. On March 14, 2000, Defendants removed to this Court under 28 U.S.C. § 1441. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 to preside over federal questions arising under ERISA, 29 U.S.C. § 1132(e)(1).

## II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56. A factual dispute is material if it might affect the outcome of the suit under the applicable law.

---

1. "Under the influence" is defined by Pennsylvania law by the following:

   (a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of a vehicle in any of the following circumstances:

   . . . . .

   (4) While the amount of alcohol by weight in the blood of:
   (i) an adult is 0.10% or greater; or

   . . . . .

   75 Pa. Cons.Stat. Ann. 3731

2. However, resolution of this factual dispute is unnecessary for the purposes of summary judgment because, even if Plaintiff was under the influence, no exclusion in the Plan applied, as discussed below in § III(a), *infra*, of this Order.

3. Defendant argues that the postmark proves that the appeal was 12 days late. However, if the appeal was mailed when written, October 14, 1998, Plaintiff did appeal within 120 days. Plaintiff also raises the triable question of whether her injury-induced incompetency tolled the time limit. However, the Court is resolving this disputed fact in favor of Defendant because it is granting Plaintiff's motion for summary judgment. *Sempier v. Johnson and Higgins*, 45 F.3d 724, 727 (3d Cir.1995). Therefore, for purposes of this Order, the Court will assume that Plaintiff's appeal was, as Defendant claims, 12 days late.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249, 106 S.Ct. 2505. The nonmoving party receives the benefit of all reasonable inferences. *Sempier v. Johnson and Higgins,* 45 F.3d 724, 727 (3d Cir.1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in her complaint; instead, it must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 317, 106 S.Ct. 2548.

## III. Discussion

■ An ERISA plan beneficiary has a right to challenge benefit eligibility determinations under 29 U.S.C. § 1132(a)(1)(B).[4] A court reviews an ERISA plan administrator's decision "under a *de novo* standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which cases a deferential standard of review is appropriate." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The plan in the case at bar does give its administrator such discretionary authority,[5] making *de novo* review inappropriate in this case. *Id.*

■ There is, however, a potential conflict of interest inherent in the struc-

4. ERISA plan participants and beneficiaries may bring civil actions "to recover benefits due [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B)

5. It is undisputed that the Plan contains the following delegation of authority, which suffices to meet the *Firestone* test for a higher standard of review:

Except as to those functions reserved within the Plan to the Employer of the Board of Directors, the Plan Administrator shall control and manage the operation and administration of the Plan. The Plan Administrator shall have the exclusive right (except as to matters reserved to the Board of Directors by the Plan) and to decide all matters arising thereunder, including the right to remedy possible ambiguities, inconsistencies, or omissions. All determinations of the Plan Administrator or the Board or Directors with respect to any matter hereunder shall be conclusive and binding on all persons. Without limiting the generality of the foregoing, the Plan Administrator shall have the following powers and duties:

. . . . .

(b) To make and enforce such rules and regulations and prescribe the use of such forms as he shall deem necessary for the efficient administration of the Plan;

. . . . .

(d) To determine the amount of benefits which shall be payable to any person in accordance with the provision of the Plan; to inform the Employer, as appropriate, of the amount for such Benefits; and to provide a full and fair review to any Participate (sic) whose claim for benefits has been denied in whole or in part;

. . .

Plan at 19.01. Later, in describing the claims procedure, the Plan states that "[t]he Plan Administrator shall have full discretion to deny or grant a claim in whole or in part." Plan at 20.01.

ture of the Plan because Defendant both administers and funds the Plan. "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id.* at 115, 109 S.Ct. 948 (*quoting* Restatement (Second) of Trusts § 187, cmt. d (1959)). The Third Circuit has instructed that the conflict should be taken into account by using a sliding scale "heightened arbitrary and capricious" standard of review. *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377 (3d Cir.2000). Defendant and Plaintiff agree that the *Pinto* standard applies to this case. Def.'s Memo in Support of Sum. Judg. at 8, Pl.'s Memo of Law in Sup. at 4–5.

In applying a heightened arbitrary and capricious review, the Court is "deferential, but not absolutely deferential." *Pinto,* 214 F.3d at 393. The greater evidence of conflict of interest, the less deferential the review. *Id.* Here, there is evidence of a conflict of interest, to wit, that Defendant both insured and administered the plan in question, and that Ms. Shirley Baker, the Personnel Manager at Maple Press, was responsible for benefit decisions, including the decision to deny benefits to Plaintiff. Def. Stmt. of Undisp. Mat. Facts at B10–11. Unfortunately, the parties in this case have provided the Court with little evidence concerning the degree of the conflict or how it affected the decision to deny benefits in Plaintiff's case. There is no evidence of record showing, for example, whether funds to pay for Plaintiff's claim would come from Defendant's operating revenue, profits, or designated fund. *Id.* at 389; *Goldstein v. Johnson & Johnson,* 251 F.3d 433 (3d Cir.2001). Nor is there evidence or argument on whether the conflict of interest is outweighed by the Defendant's interest in keeping its employee happy. *Nazay v. Miller,* 949 F.2d 1323, 1335 (3d Cir.1991). Without such evidence, this Court is unwilling to slide far along *Pinto's* sliding scale of heightened arbitrary and capricious review. Therefore, this Court will review the Defendant's decision to deny benefits under a standard that is heightened, but very close to, arbitrary and capricious.

The arbitrary and capricious standard is highly deferential and a Court "may overturn a decision of the Plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffmann–LaRoche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993) (internal quotation omitted). "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Id.* (internal quotation omitted). The Court's review takes this guide for arbitrary and capricious and heightens it a small degree to take into account the conflict of interest.[6] *Pinto,* at 393. *See, Firestone Tire and Rubber Co.,* at 115, 109 S.Ct. 948.

### (a) Maple Press's Decision to Deny Medical Benefits and Short Term Disability Benefits

The most important issue in this case is whether Defendant's decision to deny Plaintiff's claim for benefits violated ERISA when reviewed under the heightened arbitrary and capricious standard articulated in § III, *supra,* of this Order. Defendant denied Plaintiff's claim for ben-

---

**6.** However, as explained below, Defendant's decision to deny Plaintiff benefits would also fail under the more deferential arbitrary and capricious standard because it is clearly erroneous as a matter of law. *Abnathya,* at 45.

efits because of an exclusionary clause which reads:

General Limitations

17.01, No payment will be made under this Plan for expenses incurred by an Employee or Defendant:

.    .    .    .    .

16. For charges due to an attempt at suicide, while sane or insane or any intentionally self-inflicted injury, including injuries incurred while under the influence of illegal drugs or alcohol in excess of the legal limit; except for treatment related directly to mental and nervous disorders;

...

Article XVII of Plan ("Clause 16").

There is no record evidence that Plaintiff intended to kill herself, intended to harm herself, or even that she intended to crash her truck. Instead, Defendant relies on its argument that any injury incurred while under the influence of alcohol is subsumed by Clause 16 in the definition of "intentionally self-inflicted injury." In other words, Defendant's position is that Clause 16 bars payment for injuries which, like Plaintiff's, are wholly unintentional but incurred while under the influence of alcohol. This Court finds that Defendant's interpretation of Clause 16 is patently wrong and its invocation in Plaintiff's case is nothing short of arbitrary and capricious, whether reviewed under a heightened standard or not. Clause 16 excludes coverage only of suicide attempts and injuries the claimant intended to cause him- or herself. The language concerning alcohol merely disallows claimants from asserting that their inebriated state makes an injury, though purposefully self-inflicted, unin-

tentional because the claimant was legally incapable of forming intent. Where there is absolutely no evidence that a catastrophic accident is anything but an accident, to sweep the resulting injury into the definition of "intentionally self-inflicted injury" belies common sense. In fact, the very inclusion of the word "intentionally" in the exclusion implies that all unintentionally self-inflicted injuries are covered, whether they occur when the claimant is under the influence of alcohol or not.

The Plan Summary, which must by law be "written in a manner calculated to be understood by the average Plan participant, and ... [must] contain ... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits,"[7] summarizes Clause 16 as excluding charges "due to an attempt at suicide, while sane or insane, or an intentionally self-inflicted injury." Summary Plan Description, General Limitations. To suggest that the average Plan participant would understand, or could reasonably be expected to be on notice, that injuries unintentionally incurred in a traffic crash while under the influence are included in the definition of "an intentionally self-inflicted injury" beggars belief. The Summary Plan Description's summary of Clause 16 is further evidence that it was not intended to exclude Plaintiff's claim.

■ It is certainly possible for ERISA plans to exclude by their terms all injuries incurred while under the influence of alcohol, or as a result of it, as the case law cited by Defendant shows. Def. Memo. in Sup. at 9–10. Such exclusionary clauses are valid and enforceable.[8] Indeed even

---

7.  29 U.S.C. § 1022

8.  For example, in *Kitchen v. Kosciusko Community Hosp. Employee Benefit Plan, et al.,* 25 Employee Benefits Cas. 1151 (N.D.Ind.2000),

separate clauses excluded coverage for **both** "an injury or Sickness which occurred as a result of a Covered Person's negligent or illegal use of alcohol," **and** for "[i]njuries from

broader clauses excluding coverage for all losses incurred while the Covered Person's blood alcohol level is above a certain limit, whether the injury results from the alcohol or not, may be enforceable. *Chmiel v. JC Penney Life Insurance Co.*, 158 F.3d 966, 969 (7th Cir.1998) (upholding denial of benefits where the ERISA administrator denied benefits to the widow of a participant on the basis of an exclusion for injury resulting while the decedent's blood alcohol level exceeded 0.10). However, the Plan at bar contains no such exclusionary alcohol clause and the Defendant may not contort an existing clause into one.

■ ERISA plans may also, by their terms, exclude coverage for injuries incurred because the Covered Person was acting in a requisite criminal manner. *See, e.g.*, discussion of *Kitchen v. Kosciusko Community Hospital Employee Benefit Plan, et al.*, in footnote 6, *supra*, of this Order, excluding coverage where injury is the result of a felony or misdemeanor. Defendants appear to have ceased to assert an affirmative defense based upon § 17.01(14) ("Clause 14") of the Plan excluding coverage for injuries arising out of certain criminal conduct. However, their briefs so blur that exclusion with the intentional self-infliction exclusion that the following discussion of it is necessary. It is noted at the outset, however, that Defendants did not raise Clause 14 as the reason for denying Plaintiff's initial claim for benefits. Rather, it was first raised as a ground for denial in Letter 3 and discussed as a ground for denial in their briefs.

■ In Letter 3, Defendant asserts that Clause 14 is another ground upon which the administrator's denial of benefits would be proper because, according to Defendants, that clause "exclude[d] payment of claims for injuries arising out of criminal conduct (e.g. felonies)." Letter 3 at 3. To support its application of Clause 14, Defendant cites to the Pennsylvania statute criminalizing driving under the influence, and alleges that Plaintiff violated it.[9] Letter 3 at 2. Defendant even suggests that Plaintiff's alleged operation of her truck without a seatbelt, by itself or coupled with the offense of driving under the influence, could rise to a level of criminal conduct excludable under Clause 14. Letter 3 at 3.

Defendants misrepresent both Clause 14 and Pennsylvania law. Clause 14 excludes coverage "for any injury suffered by the Covered Person during the commission by them of an *assault or felony*." Plan at § 17.01(14), as provided to the Court as Ex. J in Def.'s Amd. Ex. (emphasis added). Contrary to the Defendant's characterization of the exclusion, it does not cover all criminal acts, of which felonies are an example. It excludes coverage in the instance of assaults and felonies only. Nothing in the facts would support an inference that Plaintiff's conduct rose to the level of an assault or felony. Under the very statute cited by Defendant in Letter 3, driving under the influence is at most (assuming multiple convictions) a misdemeanor of the first degree.[10] The only other criminal

driving under the influence of alcohol, over the legal limit, and when injuries are a result of a felony or misdemeanor." *See also, Sutton v. Hearth & Home Distributors, Inc. Employee Benefit Plan*, 881 F.Supp. 210 (D.Md. 1995) (Where clause exempted medical expenses "arising out of an accident or illness due to the use or misuse of alcohol"). The Court cites to these cases merely as examples

containing valid exclusionary clauses which would have excluded coverage of Plaintiff's claims, not because such clauses are limited to their approaches or wording.

**9.** *See* footnote 1, *supra*.

**10.** The penalty section of the statute reads in pertinent part:
    (e) Penalty.—

violation cited by Defendant, Plaintiff's alleged operation of a vehicle without a seatbelt, is at most a summary offense subject to a maximum $10 fine. 75 Pa.C.S.A. § 4581.[11]

There is no basis in Clause 14 for denying benefits on the grounds that Plaintiff committed, at most, a misdemeanor and a $10 summary offense. A review of the statutes governing the offenses cited by Defendant as basis for denial of coverage defeats Defendant's assertion. To the degree the initial decision to deny benefits, and the decision to uphold the denial of benefits, were grounded on Clause 14, they were wholly unsupported by evidence and erroneous as a matter of law, arbitrary and capricious. *Abnathya v. Hoffmann–LaRoche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993). It is further evidence of Defendant's utter disregard for the Terms of the Plan and determination to deny Plaintiff's claim no matter what.

In conclusion, this Court finds that Defendant's denial of benefits was clearly erroneous as a matter of law and wholly unsupported by the evidence, and arbitrary and capricious when reviewed under either the arbitrary and capricious standard or the heightened arbitrary and capricious standard. Summary Judgment is therefore granted for Plaintiffs on the question of Defendant's liability for improperly denying medical and short term benefits under the Plan.

**(b) Maple Press's Failure to Provide Specific Reason for Denial of Medical Benefits**

■ The Plan requires that a denial of benefits be in writing and:

... set forth, in a manner calculated to be understood by the claimant:

(a) The specific reason or reasons for the denial;

(b) Specific reference to pertinent Plan provisions on which the denial is based;

(c) A description of any additional material of [sic] information necessary for the claimant to perfect the claim and an explanation of why such material is necessary; and

(d) An explanation of the Plan's claim review procedure.

Plan at § 20.02.[12] Count I of Plaintiff's claim seeks, among other relief, *per diem*

---

(1) Any person violating any of the provisions of this section is guilty of a **misdemeanor of the second degree,** except that a person convicted of a third or subsequent offense is guilty of a **misdemeanor of the first degree,** and the sentencing court shall order the person to pay a fine of not less than $300 and serve a minimum term of imprisonment of . . . .

75 Pa. Cons.Stat. Ann. 3731

**11.** 75 Pa.C.S.A. § 4581 provides, in pertinent part:

(a) ... (2) ...each driver and front seat occupant of a passenger car, .. [or] truck ... operated in this Commonwealth shall wear a properly adjusted and fastened safety seat belt system. A conviction under this paragraph ... shall occur only as a secondary action when a driver of a

motor vehicle has been convicted of any other provision of this title. . . .

.    .    .    .    .

(b) Offense.—... Anyone who violates subsection (a)(2) ... commits a **summary offense** and shall, upon conviction, be sentenced to pay a **fine of $10.** No person shall be convicted of a violation of subsection (a)(2) unless the person is also convicted of another violation of this title which occurred at the same time.

.    .    .    .    .

(e) Civil actions.—In no event shall a violation or alleged violation of this subchapter be used as evidence in a trial of any civil action; . . . .

**12.** § 503 of ERISA provides that providers must "[p]rovide adequate notice in writing to any participant or beneficiary whose claim

penalties for failure to properly advise Plaintiff of the denial of medical benefits and specific reasons therefor, in violation of the terms of the Plan, and pursuant to 29 U.S.C. § 1132. This claim refers only to medical benefits—Plaintiff does not allege that Defendant failed to properly advise Plaintiff of the denial of short term disability benefits. Both parties assert that summary judgment may be had on this matter based the EOB, Letter 1, and Letter 2, all of which form a part of the record.

**Letter 1**

Letter 1 reads in pertinent part:

**In response to your application for short term disability benefits** under the Personal Disability Coverage of The Maple Press Company Employee Benefit Plan, benefits are excluded for a disability resulting from self-inflicted injuries and for a disability arising in cases of non-covered medical treatment (section 9.01).

You may request a review of the denial of benefits, review pertinent documents, and submit issues and comments in writing within 120 days after receiving this denial to the plan administrator at: . . .

Letter 1, as provided to the Court as Ex. M in Def.'s Amd. Ex. (emphasis added).

Letter 1 informs Plaintiff that her claim for short term disability benefits were being denied and why. Specifically, the letter cites to Plan § 9.02 and gives two reasons for denial of short term disability benefits: that her short term disability resulted from a self-inflicted injury; and that short term disability benefits are not

covered for "disabilities arising in cases of non-covered medical treatment." Letter 1 at ¶ 1. However, Letter 1 contains no other mention of medical treatment. It does no more than inform Plaintiff, by implication, that at least some of her claim for benefits for medical treatment—that portion relating to her disability—may also be denied. The letter did not inform Plaintiff of the "specific reason or reasons for the denial [of medical benefits], [or] specific reference to pertinent Plan provisions on which the denial [of medical benefits] is based" as required by the Plan. Plan at § 20.02. No reasonable person could conclude that Letter 1 fulfilled Defendant's obligation under the Plan to notify Plaintiff of the specific reasons for denial and Plan provision on which denial of medical benefits was based.

**Letter 2**

Letter 2 states, in pertinent part, "Attached is the denial for [Plaintiff's] medical claims and disability claims. Please feel free to contact me if you need copies of the medical bills or anything else you may need. Thank you." Letter 2, as provided to the Court as Ex. N in Def.'s Amd. Ex. With regard to medical benefits, Letter 2 states that medical benefits were being denied, but goes no further. No explanation of the specific reasons for the denial or Plan provisions are provided.

**The EOB**

The EOB states in pertinent part:

All bills relating to [Plaintiff's] auto accident beginning on 12–14–97 and thereafter are being denied from coverage (see remark D)

.        .        .        .        .

---

for benefits under the Plan has been denied, **setting forth the specific reasons for such denial, written in a manner calculated to be understood** by the participant . . . ." 29 U.S.C. § 1133 (emphasis added). However, Plaintiff has not asserted a claim pursuant to § 503,

and this Court does not evaluate whether Defendant's communications fulfill the requirements of § 503. Instead the Court reviews whether Defendants's communications fulfilled the requirements of the Plan itself, specifically, § 20.02.

Expenses are not covered under the General Limitations section of the Maple Press Company Employee Benefit Plan (Section 17.01 and 17.01(16)[sic]). The employee may request a review of the denial of benefits, review pertinent documents, and submit issues and comments in writing within 120 days after receiving this denial to the plan administrator at: ....

EOB, as provided to the Court as Ex. L in Def.'s Amd. Ex. (emphasis added).[13] The EOB cites to two provisions of the plan: § 17.01, which is the General Limitations section containing twenty-one exclusions; and § 17.01(16), one of those twenty-one exclusions, referred to in this Order as Clause 16.[14] The EOB provided Plaintiff with the address to send her appeal and the time within which she could appeal the decision.

The issue, then, is whether Letters 1 and 2 and the EOB fulfilled Defendant's obligation under the Plan to give Plaintiff a "specific reason or reasons for the denial" of medical benefits. Plan at § 20.02. The Court notes that the requirements for precise reasons and identification of Plan provision are separate requirements, indi-

cating that providing one does not satisfy the other. Even if it were possible for citation to a Plan provision to suffice, it did not in this case. Here, the citation to Clause 16 did not give Plaintiff a precise reason for the denial because that Clause excludes suicide attempts as well as intentionally self-inflicted injury (and, according to Defendant's incorrect interpretation, all unintentional injuries incurred while under the influence of alcohol). The purposes behind the requirement that the denial letter provide specific reasons for a denial "is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts." *Skretvedt v. E.I. DuPont De Nemours and Co.,* No. 00–2918 2001, 2001 WL 1185796 at n. 8 (3d Cir. October 5, 2001) (citing *DuMond v. Centex Corp.,* 172 F.3d 618, 622 (8th Cir.1999) (noting the reasons for Section 503's identical requirement of a specific reason for denial)) It can not be said that information in Letter 1 and 2 and the EOB provided Plaintiff with enough information to prepare for her administrative appeal of her medical benefits. From the citation to Clause 16 Plaintiff would not know if she

---

13. The Court notes with concern that Defendant's memo in support of its motion for summary judgment states that:

> Consistent with the requirements of both ERISA and the Plan Document, Maple Press: (1) provided plaintiff with written notice that it was denying her claim for medical benefits—**the June 15, 1998 EOB; (2) set forth in *that* written notice the basis for denial—intentionally self-inflicted injury;** (3) set forth in the written notice of the provisions of the Plan upon which Maple Press based its denial—Sections 17.01 and 17.01(16); and (4) set forth in the written notice information about both appeals procedures and plaintiff's right to review of relevant documents. **(6/15/98 EOB;** 29 U.S.C. § 1133; Plan at § 20.02).

Def.'s Memo in Sup. at 6 (emphasis added). However, nowhere in the EOB, provided to

the Court in Def.'s Amd. Ex. as Ex. L, do the words "intentionally," "self," "inflicted," or "injury" appear. Such an argument exceeds the bounds of vigorous advocacy. Defendant's representation of Letter 1 in its memo in support of its motion to dismiss are equally troubling. Def.'s Memo. in Sup. of Mot to Dis. (Doc. No. 8) at 4. *See,* Magistrate Judge Mannion's Report and Recommendation (Doc. No. 32) at 7.

14. Clause 16 reads in pertinent part:

> No payment will be made ... For charges due to an attempt at suicide, while sane or insane or any intentionally self-inflicted injury, including injuries incurred while under the influence of illegal drugs or alcohol in excess of the legal limit; except for treatment related directly to mental and nervous disorders;

needed to present the Board with evidence that: (a) she did not intend to commit suicide; (b) her injuries were the result of a car accident and not "intentionally self-inflicted" in some other manner; or (c) she was not under the influence when her injuries were incurred. Despite Defendant's vigorous attempts to argue the existence of facts to the contrary, Letters 1 and 2 and the EOB can not be said to have provided Plaintiff with the precise reason for the denial of her medical benefits. Therefore, Plaintiff's motion for summary judgment on the issue of Defendant's failure to provide a specific reason for denial of medical benefits is granted.

### (c) Timeliness of Plaintiff's Appeal

■ Defendants have raised untimeliness of Plaintiff's appeal as an affirmative defense to Plaintiff's instant action and both parties now seek summary judgment upon it. As discussed in § I of this Order, the parties dispute whether Plaintiff's appeal was late. For the purpose of this Order, the Court assumes that Plaintiff's appeal was, as Defendant alleges, 12 days late.

■ Plaintiff must have exhausted all administrative remedies available under the Plan before judicial review is available. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d. Cir.1990). However, when fully exhausting those remedies would be futile, the exhaustion requirement can be waived. *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F.Supp. 181, 187 (E.D.Pa. 1991); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir.1990). To show futility, Plaintiff "must show that it is certain that [her] claim will be denied on appeal, not merely that they doubt an appeal will

change the decision." *Kimble v. International Brotherhood of Teamsters*, 826 F.Supp. 945, 947 (E.D.Pa.1993). *See, Smith v. Blue Cross & Blue Shield United of Wisconsin*, 959 F.2d 655, 659 (7th Cir. 1992); *Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund*, 590 F.Supp. 211, 216 (E.D.Pa.1984) (holding that Plaintiffs must prove that the Defendants' position had become so fixed that an appeal would serve no purpose). In the case at bar, Defendant reviewed Plaintiff's appeal on its merits, and upheld the Plan Administrator's interpretation and application of Clause 16. It is clear that, had Plaintiff timely appealed the Plan Administrator's decision, it would have been upheld. The full review on the merits, as evinced by and explained in Letter 3, proves that conclusively. Although claiming that her appeal was untimely, the Administrator's decision was nevertheless fully reviewed on its merits, and upheld on the same arbitrary and capricious grounds. No reasonable person could conclude that, had Plaintiff had submitted her appeal 13 days earlier, the decision would have been different. Even assuming as true Defendant's allegation that Plaintiff's appeal was 12 days late, this failure to exhaust will be excused because timely exhaustion would have been futile.[15] Therefore, Plaintiff's motion for summary judgment on Defendant's affirmative defense of untimeliness is granted.

### IV. Order

Accordingly, for the reasons stated in this memorandum, **IT IS ORDERED THAT:**

1. Defendant's motion for summary judgment is **DENIED.**

---

15. Plaintiff also argues that she was not required to appeal the administrator's decision before seeking relief in this Court because the Plan states that appeal is permissive. The Court will not address the merits of this argument because it finds that the exhaustion requirement is waived because appeal is futile.

2. Plaintiff's motion for summary judgment is **GRANTED.**

3. Entry of Judgment for Plaintiff shall be deferred until the conclusion of the case.

4. By November 13, 2001, the Plaintiff shall submit a brief of no longer than fifteen (15) pages with supporting documents, if any, concerning damages. Within ten (10) days after the filing of Plaintiff's brief, Defendant shall file a response of up to fifteen (15) pages. Plaintiff shall have ten (10) days to file a reply of up to ten (10) pages.

In their briefs, the parties should address the issue of whether Plaintiff's claim for medical benefits should be remanded to the Plan administrator or whether the Court should make an appropriate award. The parties should also address what other damages, if any, are proper.